607 So.2d 122 (1992)
Eugene C. SMITH
v.
Nancy SMITH.
No. 91-CA-71.
Supreme Court of Mississippi.
September 17, 1992.
*123 Walter W. Teel, Meadows Riley Koennen & Teel, Gulfport, for appellant.
Gail D. Nicholson, Nicholson & Nicholson, Gulfport, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
Eugene Smith appeals from an adverse ruling from the Chancery Court of Harrison County in a divorce and support litigation. He claims error in granting periodic and lump sum alimony in excess of his ability to pay and in granting an equitable lien to secure alimony. We find little support in the record for the chancellor's conclusion with regard to Eugene's ability to pay. We therefore reverse and remand for further proceedings.

I
Eugene filed his complaint for divorce on May 30, 1989, on the grounds that Nancy was guilty of habitual, cruel and inhuman treatment under § 93-5-1, Miss. Code Ann. (1972). In the alternative, he asked for a divorce on the basis of irreconcilable differences. Nancy filed a cross-bill for separate maintenance which she later amended to seek divorce on the grounds of adultery, habitual cruelty, and/or desertion.
The Chancellor made his findings and rulings on October 17, 1990. Nancy Smith and Eugene Smith, her husband of more than twenty-six years, were granted a divorce on the ground of adultery alone. The chancellor found that Eugene had deserted the marriage to cohabit with his girlfriend. Because the four children born of the marriage were all of majority age, child support and custody were not an issue. Chancellor Stewart further found that "[Nancy] had assisted her husband in material fashion during most of the marriage, and that she deserved the consideration of being treated as an equal partner in dissolution of the marital state." In considering the relief in this case, the chancellor considered the following factors and thus concluded:
(1) The parties' health: Eugene is generally in good health; Nancy is not since she has a ruptured disc in her lower back and has had emotional problems resulting in anxiety and the like.
(2) The parties' income and earning capacity: Eugene earned $245,202 from 1985-1989, spending about $303,907. It would appear he nets $3,891.88 monthly. One of his accountants estimated that he would earn $80,242 in 1990, the same as in 1989, but Eugene denied that this would happen. Nancy, on the other hand, has little or no income from basic *124 sewing skills, having made a high figure of $200 one month from alterations and drapery making.
(3) The parties' expenses vis-a-vis reasonable necessities: Eugene says he has fixed expenses of $2,452 for loans and mortgages and $1,479 in alleged living expenses. He asserted that his former love interest is not in the picture, although she still works with him and is paid by a small monthly draw of $400 to $1400. Nancy stated in her financial declaration filed with the court that she requires $644 per month for utilities and the like.
(4) The wife's free use of home furnishings and automobile: Eugene left home about five years ago, leaving Nancy alone and without transportation. She has the furnishings in the house. He rents an apartment, has an IRA of $2,000, three shares of stock worth $30 per share; and he asserts that he has no interest in land other than the house, no cash other than $1,000 in a HIMMA account, several computers and some office equipment. He drives a 1985 Buick automobile.
(5) Other relevant facts and circumstances: the Smiths formerly spent about $10,000 per year on their children but this expense is no longer incurred.
As a result of the factors considered, the chancellor ordered Eugene to pay Nancy $850 periodic alimony each month. Additionally, Eugene was to provide health insurance to Nancy. Nancy was awarded the "use and possession of the family home as continuing periodic alimony, with all costs of mortgages, taxes, and existing amount of insurance to be paid by Mr. Smith." Nancy was also awarded a permanent lump sum alimony of $50,000, which was to be secured by a lien in her favor, imposed upon the marital property as security for payment of all alimony awarded. Eugene was assessed the $1,000 attorney's fees incurred by Nancy in this matter.
Eugene filed a motion for reconsideration or, in the alternative, for a new trial, alleging that the chancellor's order did not leave him enough money to pay his debts or to live. Eugene asserted that the $850 per month alimony constituted a windfall, because the testimony at trial revealed that Nancy only needed $400 per month, not including the outstanding mortgages, after deducting her earnings from her stated needs.
On December 18, 1990, upon reconsideration, the chancellor modified the divorce judgment by reducing the periodic alimony award from $850 to $650. The court ordered that the remaining terms in the final judgment remain the same. Aggrieved, on January 11, 1991, Eugene timely filed notice of appeal to this Court.

II
Eugene is a self-employed wood products dealer. His corporation, Smith and Associates, buys and sells wood products. He is essentially a broker. Eugene stated that he has been in this type of business since about January or February of 1986. According to him, Nancy did not contribute any financial assets to the business. Nancy is of the opinion that Smith and Associates was formed following the parties' separation to keep her from bringing a claim to receive part of his corporate assets. Eugene's first business, Specialty Products was incorporated 1983, with Nancy and one of their daughters as fellow incorporators.
Eugene has some college education but did not graduate. Nancy graduated from a business school and worked as a legal secretary and for a soft drink company. For the majority of their marriage, Nancy remained at home and raised the children. She moved her family seven times during the course of the marriage to facilitate Eugene's career. While at home, Nancy earned a small amount of income by sewing.
The bulk of this appeal centers around a dispute between the parties as to Eugene's actual income. Eugene maintains that he cannot afford to expend the amount of lump or periodic alimony to Nancy that the chancellor ordered him to pay. On his financial statement, Eugene's gross income per month was $5,216.41, after taxes are deducted, his net income was $3,891.88 per *125 month. He claims his expenses are in excess of $4,700 per month. In 1985, Eugene's income was shown to be $51,302, but admitted expenditures of $74,231. Eugene asserted that the excess came from an $31,000 he inherited from his father.
In 1986, his income tax return showed $39,190 in net income. There were admitted expenditures of $56,719. Again, Eugene identified the source of the excess as the balance of his inheritance and loans. In 1987 and 1988, Eugene was employed by Fernwood Enterprises. The major part of his income was from that employment in 1988.
For 1987, the adjusted gross income was $35,250 with expenditures of $43,381. In 1988, he reported income of $39,218, and expenditures of $49,334. In 1989, Eugene's adjusted gross income was $51,965. In 1989, Eugene paid taxes on $80,242 but at the time of trial, he did not have a work sheet evincing what he spent that year. Based on the previous year's income, Eugene's accountant predicted that his 1990 income would be about the same as 1989, specifically, around $80,000. Eugene noted a downturn, however, and did not agree with the accountant's estimate, which was done solely for purposes of estimated income tax payments.
According to the business and personal tax returns, 1989 was the first big year for Eugene's wood brokering business. He had gross sales in excess of $1.5 million compared with $535,000 the year before and $355,000 the year before that. Eugene estimated that his gross profit on sales ranged from four to five percent. The corporate tax return for 1988 reflected such a gross in the amount of $27,000 and a net loss in the amount of $6,000. In that year Eugene showed income from a sales enterprise other than Smith and Associates in an amount of approximately $9,000. When that amount was netted against his tax loss from the corporation the result was taxable income equal to the amount he received from Fernwood Enterprises, a little less than $40,000.
Gross profits in 1989 exceeded the five percent level. They were over nine percent or $142,000. Of this Eugene netted $80,000 after expenses. Expenses included approximately $10,000 paid to his former girl friend, who he refers to as his "girl Friday," and over $24,000 for office, automobile, utilities and telephone expenses. It is unclear what services are performed by the former girlfriend. It is certainly reasonable to believe that she is performing valuable clerical services at a cost at or below what others would charge. On the other hand, the relationship between the two might support a conclusion that her compensation is unwarranted.
Eugene testified that he has no office and does all of his work out of his apartment. He works primarily by telephone. He never takes delivery of his products. They are delivered directly from his vendor to his customer.
Corporate assets other than receivables are minimal. Fixed assets consist of two computers valued at less than $3,000. Other assets are two small accounts and a $20,000 note from Eugene to the corporation. According to the tax returns, Eugene borrowed $14,000 in 1987 and the rest after the 1989 tax year. Eugene testified that corporate receivables at the time of trial were $89,333.44 and accounts payable were $128,984 for a deficit of $43,029.70. The corporation shows a negative net worth of $21,587.39.
The only finding made by the chancellor as to Eugene's income placed the figure at $3,892 per month, net. This amount is derived from Eugene's estimate of his level of earnings at the time of trial at $5,216 gross, less taxes of $1,324. Eugene's fixed consumer and mortgage debt service was $2,452 per month. He was required by the chancellor's order to pay the health insurance for Nancy and taxes and insurance on the family residence. These expenses, when combined with Eugene's expenses for rent, food, automobile and the like totaled $1,479 for a negative balance of $79 per month.

III
Under the standard of review of a chancery court's findings of fact, particularly *126 in the areas of divorce, alimony and child support, this Court will not disturb a decision on appeal unless the findings are manifestly in error. Smith v. Smith, 585 So.2d 750, 753 (Miss. 1991); Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989). If this Court finds that the chancellor's decision was manifestly wrong, or that the court applied an erroneous legal standard, this Court will not hesitate to reverse. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss. 1989).
Eugene attacks the awards of periodic and lump sum alimony as excessive. He asserts that the periodic alimony amount of $650 per month will leave him $690 in the red. Additionally, he maintains that he cannot pay the lump sum alimony. He states that the chancellor failed to consider Nancy's obligation to assist herself.
As to periodic alimony, the chancellor adequately considered the appropriate factors and concluded that, based on a thirty-one year marriage, wherein Nancy was almost exclusively a house wife, Nancy's age, 50, and health, her support should come from Eugene. Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 152 (1955); Powers v. Powers, 568 So.2d 255, 259 (Miss. 1990). While the source of that support in excess of the house note and related expenses is not readily apparent, it is reasonable to credit the chancellor with viewing that the business income and expenses were sufficiently flexible to allow for Nancy's demonstrated need. The amount of $650 per month for food, utilities, clothing, entertainment and miscellaneous other expenses is far from extravagant.
The lump sum alimony award is another matter. When determining the award of lump sum alimony, the following factors are considered:
1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business. Tutor v. Tutor, 494 So.2d 362 (Miss. 1986); Schilling v. Schilling, 452 So.2d 834 (Miss. 1984)
2) A long marriage. Jenkins v. Jenkins, 278 So.2d 446, 449 (Miss. 1973)
3) Where recipient spouse has no separate income or the separate income is meager by comparison. Jenkins, Schilling, Tutor, supra.

4) Without the lump sum award the receiving spouse would lack financial security. Abshire v. Abshire, 459 So.2d 802, 804 (Miss. 1984)
Eugene has no source of income or assets to cover the amount awarded. The chancellor states no basis for the award of lump sum alimony in this amount. There were no marital assets of any consequence, other than the marital home. The duration of the marriage and Nancy's meager separate income are factors supporting a lump sum award, Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1988), Eugene has accumulated no wealth and the court must also consider his ability to pay. McKay v. McKay, 312 So.2d 12 (Miss. 1975). Under the circumstances, a lump sum award in the amount granted cannot be justified. We decline to rule that no amount is justified, though it appears doubtful. We will reverse and remand on this issue for further proceedings to determine whether any amount of lump sum alimony is warranted and, if so, to determine a reasonable payment schedule in light of Eugene's obligations and living expenses.

IV
Eugene asserts that the chancellor erred in imposing a lien in Nancy's favor to secure the lump sum alimony payment because the pleadings do not reflect that Nancy requested any sort of lien. The chancellor stated, "This was imposed as security for payment of any kind of alimony awarded by the judgment." Eugene argues that our law prohibits grant of a lien where none is prayed for. As support for his proposition, Eugene cites Holleman v. Holleman, 527 So.2d 90 (Miss. 1988). In that case, this Court held that the chancery court erred in impressing a lien against the homestead of Mr. Holleman, where Mrs. Holleman did not pray for such relief in her pleadings. 527 So.2d at 93. Mr. Holleman argued that since Mrs. Holleman failed to *127 plead for a lien to secure payment of the judgment in her complaint, he did not have adequate notice to prepare a proper defense to that point. Mrs. Holleman admitted that the lien was not specifically pled, but maintained that because alimony was requested, and because she made a general prayer for any other equitable relief, the possibility of a lien imposition was adequately noticed. Id. at 92-93.
We recognized that "under the general prayer, any relief will be granted which the original bill justifies and which is established by the main facts of the case, so long as the relief granted `will not cause surprise or prejudice to the defendant.'" Holleman, at 93, citing V.A. Griffith, Mississippi Chancery Practice § 186 (1950). See, Warner's Griffith, Mississippi Chancery Practice § 1896 (1991). Additionally, when imposing a lien to secure the payment of alimony, child support, etc., it has been asserted that no such lien should be given or declared unless specifically asked for, so that the husband may have an opportunity to make a defense. J.W. Bunkley, Divorce and Separation in Mississippi § 609 (1957). This Court reasoned that the lower court had the power to impose a lien, citing Buckalew v. Stewart, 229 So.2d 559 (Miss. 1969), but could not impose one where there was no notice given, so as to prevent surprise.
Unfortunately, we failed to take cognizance of our changed pleading standards. We recognized in Johnson v. Johnson, 550 So.2d 416 (Miss. 1989) that this matter is governed by our general pleadings rules, as they are not inconsistent with the statute in this regard. There, in response to a claim that divorce pleadings precluded an award of a partition of the marital home for failure to specifically request such relief, we observed that
Rule 8(a)(2), Miss R.Civ.P., provides that "a pleading which sets forth a claim for relief ... shall contain ... a demand for the relief to which [the pleader] deems himself entitled." The rule is without a magic words requirement. Rule 54(c), in relevant part, provides that
Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleading; however, final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings or amended pleadings.
As there is no statutory procedure in conflict with these two rules, they govern divorce proceedings. See, Mayoza v. Mayoza 526 So.2d 547, 548 (Miss. 1988).
550 So.2d at 419-420.
There is then no pleadings impediment to the imposition of an equitable lien. As this matter must be remanded for further proceedings with regard to the lump sum alimony award, we will leave it to the chancellor to determine whether, in light of that court's disposition of that issue, an equitable lien continues to be necessary and appropriate.

CONCLUSION
For the foregoing reasons the judgment of the chancery court is reversed insofar as it awards lump sum alimony and an equitable lien and as to those issues this matter is remanded for further consideration. As to all other issues, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents.