DIAZ, J.,
dissenting:
¶ 41. I respectfully dissent from the majority’s decision to reverse and render the decision of the chancery court directing Independent Healthcare Management to pay $64,115.73 in damages to the City of Bruce for a contractual breach. The majority’s decision is logically unsound because it concluded that the chancellor correctly found that IHM committed a breach of its contract by closing the hospital but denied the City any contractual remedy beyond payment of the minimal lease terms.
¶ 42. It is well established in Mississippi jurisprudence that the scope of review exercised by this Court with respect to a chancellor’s findings is limited to a determination of whether those findings are “manifestly erroneous or due to the application of an erroneous legal standard.” Smith v. Smith, 607 So.2d 122, 126 (Miss. *891 1992). Moreover, we will not reverse a chancellor’s factual finding where it is supported by substantial evidence. Morreale v. Morreale, 646 So.2d 1264, 1266 (Miss.1994).
¶43. The Mississippi Supreme Court stated that “the purpose [of this Court] is to put the injured party in as good a position as he would have been in but for the breach.” J.O. Hooker & Sons, Inc. v. Roberts Cabinet Co., Inc., 683 So.2d 396, 405 (Miss.1996) (citing Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 295 (Miss.1992)). Furthermore, “a party must prove that he is entitled to an award of damages to a ‘reasonable certainty.’ ” Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss.1987).
¶44. The majority states that whether or not the hospital was operating, the City would still be obligated to pay the bonds. Although that assertion is true, the majority’s reasoning misses the mark: If IHM had performed under the contract, the City would have an operational hospital in exchange for the bond indebtedness. According to the majority, IHM could only be liable for a maximum of $50 in damages based on the terms of the lease provision. However, it is doubtful that the City would have obtained $500,000 in bonds to renovate the hospital if IHM had not promised to maintain an operational hospital for five years. In other words, it is unlikely that the City would have entered into a contract with IHM that gave every advantage to IHM, including no recourse for the City if IHM breached its contract to operate a hospital. Therefore, contrary to what the majority asserts, sound logical and legal correlations exist between IHM’s lease of the hospital and the bonds obtained by the City.
¶45. The chancellor found that IHM wilfully breached its contract with the City and therefore assessed damages based on the bond debt and the unexpired term of the lease totaling $64,115.73. By ordering the award of damages, the chancellor tried to put the City in as good a position as if the contract had been performed. Since the contract was to maintain a operational hospital with renovations which were financed, by bonds from the City, the chancellor considered the evidence and ordered that IHM pay monetary damages equal to the bonded indebtedness for the remainder of the unexpired lease term. Furthermore, the chancellor did not abuse his discretion or employ an improper legal standard; therefore, I would not disturb the chancellor’s determination that IHM breached its contract and is liable for $64,-115.73 in damages.
KING and PAYNE, JJ„ join this separate opinion.