LEE, J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. Cheryl and Yal Wallmark were married on January 4, 1985, and separated on February 25, 1999. At the time of the marriage Val was in the Navy and Cheryl worked in naval oceanography. There are contradictory statements as to whether Cheryl quit this job or was fired. Nevertheless, during the first years of marriage, Cheryl worked at various jobs including waitressing. After Val was discharged from the Navy in 1988, the parties moved to the Gulf Coast where Cheryl once again became employed with the naval oceanographic office where she worked until 1996. During this time Cheryl had been experiencing health problems, finally being diagnosed with chronic fatigue syndrome and fybromyalgia. Cheryl began receiving full disability benefits in 1998.
¶ 2. Val worked at various jobs after his discharge from the Navy. At the time of the trial Val had been working for Senso-matic Electronics.
¶ 3. Val filed a complaint for divorce in April 2000, alleging habitual cruel and inhuman treatment. Cheryl filed a counterclaim in September 2000, alleging uncondoned adultery, habitual cruel and inhuman treatment, and alternatively, irreconcilable differences. The matter came on for trial in May 2001, but prior to the court’s ruling, both parties requested that the matter be reopened in order to receive additional testimony on the issue of the marital estate. Further evidence was submitted to the court in *70 the -form of affidavits submitted by both parties in December 2001.
¶ 4. On June 13, 2002, Cheryl was granted a divorce on the ground of uncondoned adultery. The court divided the assets and liabilities, denied lump sum and permanent alimony to Cheryl, and directed each party to pay their own attorney’s fees and costs. Cheryl now perfects her appeal to this Court asserting the following issues: (1) the chancellor erred in denying her permanent alimony; (2) the chancellor erred in failing to award her lump sum alimony; (3) the chancellor erred in determining equitable distribution; and (4) the chancellor erred in denying her attorney’s fees.
STANDARD OF REVIEW
¶ 5. When reviewing the decisions of a chancellor, this Court applies a limited abuse of discretion standard of review. McNeil v. Hester, 753 So.2d 1057(¶ 21) (Miss.2000). The findings of the chancellor will not be disturbed “unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard.” Id.
DISCUSSION OF ISSUES
I. DID THE CHANCELLOR ERR IN DENYING CHERYL PERMANENT ALIMONY?
¶ 6. In her first issue, Cheryl contends that the denial of permanent alimony by the chancellor was unfair, inequitable, and clear error. Specifically, Cheryl claims that the disparity in income between her and Val is such that permanent alimony is necessary. The Mississippi Supreme Court has held that an award of alimony is left to the chancellor’s discretion. Voda v. Voda, 731 So.2d 1152(¶ 7) (Miss.1999). “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); Smith v. Smith, 607 So.2d 122, 126 (Miss.1992). The following factors are to be considered by the chancellor in deciding whether to award alimony: the income and expenses of the parties, the health and earning capacities of the parties, the needs of each party, the obligations and assets of each party, the length of the marriage, the presence or absence of minor children in the home, the age of the parties, the standard of living of the parties during the marriage and at support determination, the tax consequences of the spousal support order, fault or misconduct, wasteful dissipation of assets by either party, and any other equitable factors. Id. We find it is clear the chancellor divided the marital assets in such a way as to alleviate the need for an alimony award to Cheryl.
¶ 7. The chancellor noted that a disparity existed in Cheryl and Val’s earning capacities. At the time of the trial, Val’s adjusted gross income is $2,539 per month, and his living expenses totaled $2,112. Cheryl’s income from her disability check is $1759 per month, and her living expenses total $1600. The chancellor did acknowledge a disparity in income between the two. However, the chancellor noted that as Val has only a secondary school education, his job and income are not assured, whereas Cheryl’s income from the government is guaranteed as is the annual increase in her income. The chancellor also recognized that Cheryl receives medical treatment at no cost to her.
¶ 8. Val was awarded the following assets: the duplex in Long Beach, Mississippi, valued at $106,059; and his retirement account, valued at $27,110. Val was ordered to pay much of the marital debt, *71 including: the debt on the duplex at approximately $8,705; the balance on the loan made against his retirement account, set at $5,306; two credit card debts with balances of $5,365 and $4,191; and repayment of a loan from Val’s mother. Val was also awarded his vehicle, valued at $1,000.
¶ 9. Cheryl was awarded the proceeds from the sale of the property in Hancock County, Mississippi, and as a result, the Pennsylvania property she purchased with the proceeds. The proceeds were valued at $132,500. Cheryl was ordered to pay the balance of $14,628 on another credit card. Cheryl was also awarded her vehicle, valued at $5,302.
¶ 10. Regarding the other factors, the parties were married for seventeen years and they had no children. The chancellor noted that age was not a deciding factor as Cheryl, who was forty-six at the time of the trial, will likely receive a lifetime income for her disability. The chancellor also noted that Val admitted to committing adultery during the marriage. The chancellor determined that “whatever depletion of the marital estate that has occurred was by the parties’ agreement” and that the only tax consequences would be a potential capital gains tax liability for Val should he sell the duplex.
¶ 11. After evaluating all of this information in great detail, the chancellor concluded that Cheryl was not entitled to alimony. In his decision to deny alimony, the chancellor stated that, after equitably dividing the marital estate, Cheryl “should be very well able to provide for her needs, and in doing so will be living at least as well as a single person as she did while married to Val.” We cannot find that the denial of periodic alimony was so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion by the chancellor; thus, we find this issue to be without merit.
II. DID THE CHANCELLOR ERR IN DENYING CHERYL LUMP SUM ALIMONY?
¶ 12. In her second issue, Cheryl claims that she met the necessary requirements in order to qualify for lump sum alimony. In Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988), the supreme court listed several factors to be considered by the chancellor in determining whether to award lump sum alimony: (1) whether the spouse seeking lump sum alimony made a substantial contribution to the potential payor’s accumulation of wealth; (2) length of the marriage; (3) disparity between the separate estates; and (4) whether the spouse seeking lump sum alimony would lack financial security in the absence of an award. However, the single most important factor is the disparity of the separate estates. Retzer v. Retzer, 578 So.2d 580, 592 (Miss.1990); Cheatham, 537 So.2d at 438.
¶ 13. The chancellor reviewed these factors and applied them to the facts. The chancellor said that both Cheryl and Val had contributed equally to the family’s support. The chancellor noted that “they each experienced periods of unemployment and under-employment, but on balance neither of them has a superior position in the contributions they made in this regard.” With regard to the length of the marriage, the chancellor found that seventeen years was long enough to consider alimony; however, he found that all other factors indicated an award of alimony was not warranted. After making an equitable division of the marital estate giving equal separate estates to the parties, the chancellor determined that no disparity existed. The chancellor further determined that, from her equal separate estate and income, Cheryl should be financially secure. We do not find that the chancellor’s decision to *72 deny an award of lump sum alimony amounts to an abuse of discretion; thus, this issue is without merit.
III. DID THE CHANCELLOR ERR IN DETERMINING EQUITABLE DISTRIBUTION?
¶ 14. In her third issue, Cheryl claims that the chancellor erred in dividing the marital assets and liabilities. Equitable distribution in a divorce case is governed by the guidelines set out by our supreme court in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). These guidelines include:
(1) economic and domestic contributions by each party to the marriage,
(2) expenditures and disposal of the marital assets by each party,
(3) the market value and emotional value of the marital assets,
(4) the value of the nonmarital property,
(5) tax, economic, contractual, and legal consequences of the distribution,
(6) elimination of alimony and other future frictional contact between the parties,
(7) the income and earning capacity of each party, and
(8) any other relevant factor that should be considered in making an equitable distribution.
Ferguson, 639 So.2d at 928. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). In his order, the chancellor, following the Ferguson factors, clearly articulated his rationale for the equitable division of the marital estate, which was discussed fully in the first issue. We conclude that the chancellor’s ruling on the issue on equitable division of the martial assets was within the court’s authority and discretion to resolve such matters. An abuse of discretion or an application of a clearly erroneous legal standard has not been shown in this matter; thus, this issue is without merit.
IV. DID THE CHANCELLOR ERR IN DENYING CHERYL ATTORNEY’S FEES?
¶ 15. In her final issue, Cheryl contends that because she was granted a divorce on the grounds of uncondoned adultery then Val should be responsible for her attorney’s fees. If a party is financially able to pay his or her own attorney in a domestic case, then it is inappropriate to require the other party to make the payment instead. Benson v. Benson, 608 So.2d 709, 712 (Miss.1992). Payment of attorney’s fees is discretionary with the chancellor and will be upheld unless we find that the discretion was abused. Armstrong, 618 So.2d at 1282. The chancellor determined that Cheryl and Val each had sufficient resources to bear the expense of their attorney’s fees. We may not always agree that a chancellor decided the issues in a manner that we would have. However, our limitation as an appellate court is to determine whether the decisions were within the range of discretion permitted by the evidence and the applicable law. Here, we cannot find that the chancellor abused his discretion in failing to award Cheryl her attorney’s fees; thus, this issue is without merit.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.