# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01130-SCT

*NANCY JOHNSON SISTRUNK*

*v.*

*CARLOS LESLIE SISTRUNK*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/13/2023 |
| TRIAL JUDGE: | HON. PAULA DRUNGOLE-ELLIS |
| TRIAL COURT ATTORNEYS: | LYDIA QUARLES |
| | ROY E. CARPENTER, JR. |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LYDIA QUARLES |
| ATTORNEY FOR APPELLEE: | ROY E. CARPENTER, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 04/03/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this divorce proceeding, the chancellor awarded the parties a divorce, divided the real and personal property approximately equally, left each party with their own financial assets and liabilities, and declined to award alimony, child support for an adult disabled child, or attorneys' fees.  The wife appears to receive significantly less monthly income than the husband.  In making its awards, the chancery court failed to make findings of fact regarding most of the factors it was required to consider in the equitable distribution of assets.  Further, many of the facts it did find are unsupported by the record, thus are not supported by

substantial evidence.  This Court consequently reverses the chancery court's judgment regarding the equitable distribution of assets and related equitable matters and remands the case for further consideration.

## FACTS AND PROCEDURAL HISTORY

¶2.     Nancy and Carlos Sistrunk were married in 1984.  They separated in 2021, and Nancy filed for divorce based on irreconcilable differences, or, alternatively, adultery.  The Sistrunks have four adult children.  However, their oldest daughter, Emily, has Down syndrome and other health issues and is incapable of supporting herself.  Carlos answered the divorce complaint, also expressing a desire to resolve the divorce based on irreconcilable differences.  Carlos admitted to the alternative ground of adultery, but the parties eventually agreed to withdraw fault grounds and proceed based on irreconcilable differences.  In 2023, Nancy filed a "Motion to Determine Status of Residence as a Marital Asset, To Confirm Title in the Plaintiff, and Motion to Determine the Responsibility of Payment of Child Support for Disabled Adult Child."  Carlos opposed the motion.

¶3.     Trial on the issues, primarily financial issues and division of property, was held in September 2023.  The facts relevant to the equitable division of property and other equitable issues are as follows.

### A.     Emily

¶4.     Emily, age thirty-seven at the time of trial, was born with Down syndrome.[1]  She was also born with three heart conditions.  As an adult, she had a mechanical aortic valve placed

---

[1]Nancy testified extensively about Emily's special needs and health needs, and Carlos agreed with Nancy's testimony regarding those issues.

in her heart.  She also has Celiac disease, fatty liver disease, and early cataracts.  Due to her medical conditions, she requires multiple medications, weekly finger pricks, and a special diet.  She cannot manage those things on her own, so Nancy manages them for her.  Emily also requires frequent doctor visits, to which Nancy takes her.  Emily can only be left alone for short periods of time, and even then, she has a cell phone and cameras in the home and in her room to monitor her.  Emily receives Social Security Disability Income in the amount of $777 per month and Supplemental Security Income in the amount of $157 per month.  Nancy and Carlos purchased a cash value life insurance policy for which Emily is the ultimate beneficiary.  It matures in the 2030s and is valued at more than $300,000.  Emily also has TriCare through Carlos's military service and additionally has Medicaid.  Prior to the separation, Carlos and Nancy claimed Emily as a dependent on their tax returns.  Nancy has been claiming Emily as a dependent on her tax returns since the separation.  Nancy and Emily still live in the marital home.  Nancy is Emily's primary caregiver.  Further, during the marriage (before the separation), Nancy retired in order to better care for Emily's multitude of needs.

**B.**     ***Real Property (Marital Home)***

¶5.     Nancy and Carlos purchased their home in 1986 for $68,000.  They made many improvements over the years.  Carlos had the home appraised in 2022, and the home was valued at $485,000.[2]  In December 2018, Nancy and Carlos signed a home equity line of credit for $77,000 on the marital home to help their daughter Kylie purchase a business, and

---

[2]Carlos disagreed with the valuation by the appraiser, whom he alone chose and hired, arguing it should be higher.

3

they executed a deed of trust in favor of the lender. Kylie testified that Nancy pays the note and that Kylie sometimes reimburses her; but she does not reimburse Nancy when the business is struggling. Carlos also signed a deed in March 2019 removing his name from property's deed and placing the property solely in Nancy's name. He testified that it was because his credit was worse than Kylie's, but Kylie's name is not on the home equity line of credit, and that loan was made prior to signing the deed over to Nancy alone. Thus, the reason for Carlos deeding his interest in the home to Nancy is unclear from the record before this Court, and the chancery court made no findings on the issue.

## C.   *Financial and Other Marital Contributions*

¶6.   Nancy worked various jobs early in the marriage, sometimes working multiple jobs at the same time. Once the children were in school, Nancy went back to school for almost two years to get her teaching degree. She began teaching, got her Master's degree at night, and got her national board certification. Nancy taught in the public school system, and she also taught student teachers at Mississippi State University (MSU). By virtue of Nancy's employment at MSU, her children received a 50 percent discount on tuition when they attended MSU, which Nancy testified was one reason she and Carlos agreed it was preferable for Nancy to continue her employment with MSU in addition to teaching in the public schools. Nancy retired in 2020 after Emily's last heart surgery to take care of Emily. Nancy receives a retirement distribution from PERS in the amount of $2367.03 every month. On her Uniform Chancery Court Rule 8.05 Financial Statement, Nancy reported a gross monthly income of $2381.73 and a net monthly income of $2287.72, with expenses of $3605.79,

resulting in a deficit of $1318.07. At the time of trial, Nancy, at age sixty-four, did not draw Social Security Income, but wanted to wait until she was sixty-seven to receive a higher amount.

¶7. Very early in the marriage, Carlos started a painting business, Sistrunk Painting. He still owned the business at the time of trial and receives a healthy income from it. Carlos, at age sixty-eight, receives Social Security Income in the amount of $1285 monthly and retirement income from the military in the amount of $882 monthly. He testified that he planned to work with the painting business until he was seventy years old. On his Rule 8.05 Financial Statement, Carlos reported a net income of $6,678.42 monthly and a gross income of $12,694 monthly solely from his business, but a total monthly income of $14,790.75 (adding his social security and military retirement to his business income) . He subtracted $7359 per month in business expenses from the $12,694 of business income. He reported monthly personal expenses of $5932.75. That included $2655 per month in automobile payments. This leaves Carlos with excess income in the amount of about $700.

¶8. Nancy testified that she was the partner who primarily cooked for the family, cleaned for the family, shopped for the family, and did yard care for the family, and that Carlos did not do any of those things on a regular basis.[3] She testified that Carlos maintained the driveway. Carlos claimed that he did "a lot" of yardwork and that he grilled. He asserted that Nancy "lied" about doing the cooking because he grilled all or part of one meal about

---

[3]Carlos's attorney appeared to concede that Nancy did the vast majority of work around the house during cross-examination when he tried to establish that Nancy did not do 100 percent of the work because occasionally Carlos would "help" her with "*her*" chores of cooking, cleaning, and shopping. (Emphasis added.)

once a week. Carlos then admitted that Nancy did the vast majority of meal preparation for the family.

### D. Assets (Other than Real Property)

#### 1. Vehicles

- 2018 Armada

¶9. Nancy testified that prior to September 1, 2023, Carlos owned the Armada. She sued Carlos's alleged paramour for alienation of affection, and in partial settlement of that lawsuit (along with cash and another vehicle), Carlos transferred ownership of the Armada to Nancy. Around $10,000 debt was owed on the Armada, for which Nancy became responsible. The Armada was valued at $30,000 to $35,000.

- 1976 Triumph

¶10. Nancy testified that prior to September 1, 2023, Carlos owned the Triumph. She sued Carlos's alleged paramour for alienation of affection, and in partial settlement of that lawsuit, Carlos transferred ownership of the Triumph to Nancy. The Triumph was valued at $15,700.

- 1968 Camaro

¶11. Carlos owned the Camaro and valued the Camaro at $26,400.

- 1966 Chevelle

¶12. Carlos owned the Chevelle and valued the Chevelle at $21,500.

- 1977 Camaro

¶13. Carlos purchased the 1977 Camaro after the separation for $3500.

- 2019 Tundra

¶14.   Carlos owned a 2019 Tundra at the time of separation, but it was totaled in a wreck in February 2022 while being driven by Carlos's paramour.

- 2017 Ram

¶15.   Carlos owned a 2017 Ram at the time of separation, but he sold it in 2022 for $45,000.

- 2022 GMC Sierra

¶16.   Carlos purchased a GMC Sierra in January 2023 for around $64,000.  At some point after the separation, he also bought and sold a 2019 Sierra.

- 1965 Buick Wildcat

¶17.   Carlos was gifted a Wildcat by his uncle that was not claimed as marital property.  He asserted that the value was $2000.

2.   *Equipment*

- John Deere riding lawnmower

¶18.    The lawnmower was valued at approximately $5000.

- John Deere tractor

¶19.   The tractor was valued at $13,000.

- Boat

¶20.   The boat was valued at $13,000 by Nancy and $5000 by Carlos in Carlos's testimony, but the boat was valued at $10,000 by Carlos in Carlos's Rule 8.05 Financial Statement.

- 3 Trailers

¶21.   Nancy valued two of the trailers at $1000 and $1300, while Carlos valued them at $850 and $750.  Carlos also testified that the third trailer should be valued at $500.

### 3. Other Personal Property

¶22.    Nancy valued the furniture in the marital home at $2000.  Carlos valued it at $15,000.  Carlos also owned about ten guns, which he valued at $2000.

### 4. Financial Accounts

¶23.    Nancy has credit accounts that have approximately $2800 owed.  Her personal bank accounts had around $8200 in them at the time she filled out her Rule 8.05 Financial Statement, in August 2022.

¶24.    Carlos has two personal bank accounts with approximately $4000 total in them. He had two IRA accounts, valued at approximately $6200, but he closed those after the separation.

## E.    Court Decision

¶25.    The chancery court granted the divorce based on irreconcilable differences on September 13, 2023.  It determined that December 28, 2021 was the end date for marital property accumulation.  It denied child support for Emily, denied alimony, and essentially split all marital nonfinancial assets in half.  In doing so, the chancery court listed the factors from *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), stated that it had considered them, but it failed to make specific factual findings in writing relevant to Nancy and Carlos as to most of the factors.  The chancery court made some scant factual findings in its bench ruling that are not in the written order, but it failed to make significantly more factual findings.  Specifics regarding the court's judgment on the assets are as follows:

### 1. Marital Home

¶26.    The chancery court gave Nancy the option to purchase Carlos's interest in the marital home for $205,665 by March 5, 2024.  If Nancy declined to do so, the court ordered that the home be sold, with Nancy and Carlos splitting the proceeds equally.

2.    *Other Assets*

¶27.    The chancery court decreed the following personal property items to be marital property: 2018 Armada, 1976 Triumph, 2 tractors, 3 trailers, household furniture, grill, 1968 Camaro, 1966 Chevrolet Malibu, boat, guns, and paint items.  The trial court identified the Wildcat and the 1977 Camaro as Carlos's property, not marital property.  The chancery court did not make written findings regarding the 2019 Tundra or the 2017 Ram that Carlos owned at the time of separation but that he had divested by the time of the divorce.  Nor did it make any findings regarding the IRAs Carlos had at the time of separation.  The chancery court did not make findings regarding the evidence that Carlos had transferred ownership of the 2018 Armada and the 1976 Triumph to Nancy as settlement for her alienation-of-affection lawsuit.

¶28.    To Nancy, the chancery court granted the 2018 Armada (and the debt on it of more than $10,000), the 1976 Triumph, the John Deere tractor, the riding lawnmower, the twelve-foot trailer, the smaller trailer, and all household items minus the specific items it granted Carlos. The court valued Nancy's assets at $65,582.  To Carlos, the court granted the 1968 Camaro, the 1966 Chevelle, the boat, the sixteen-foot trailer, the guns, the deck furniture, the grill, the credenza, and the painting supplies.  It valued these items at $63,650.  Each party was simply to keep the money in their separate bank accounts and retain their separate debts. Finally, the chancery court ordered that Carlos maintain Nancy as the beneficiary of his army

9

retirement survivor's benefit in the amount of $100,000. It further denied Nancy's request for attorneys' fees.

¶29. Nancy appeals. She argues that the chancery court erred by: 1) failing to make specific findings of fact and conclusions of law in the application of the *Ferguson* factors; 2) failing to award alimony; 3) dismissing Nancy's "Motion to Determine Status of the Residence as a Marital Asset, to Confirm Title in the Plaintiff, and Motion to Determine the Responsibility for Payment of Child Support for a Disabled Adult Child"; 4) failing to allow Nancy long-term use of the marital home; 5) attributing the 2018 Armada and 1976 Triumph to Nancy as marital assets; 6) denying Nancy's claims for attorneys' fees.

## ANALYSIS

### A.    *Standard of Review*

¶30. This Court applies "a limited standard of review in domestic relations cases." *Gerty v. Gerty*, 265 So. 3d 121, 130 (Miss. 2018) (internal quotation mark omitted) (quoting *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (Miss. 2010)). Questions of law are reviewed de novo. *Id.* The chancellor's findings, when supported by substantial evidence, will not be reversed "unless the chancellor abused [his or her] discretion, was manifestly wrong," was clearly erroneous, or applied an erroneous legal standard. *Id.* (quoting *Wood*, 35 So. 3d at 512).

### B.    *Specific Findings in Applying the Ferguson Factors*

¶31. Nancy argues that the chancellor erred by failing to make specific findings regarding each *Ferguson* factor. She further argues that specific findings on the *Ferguson* factors

10

would favor her. Carlos argues that the bench ruling by the chancellor satisfies the *Ferguson* factors. The bulk of his brief on this issue is more than three-and-a-half pages, single-spaced, in which he quotes the entirety of the bench ruling, even the parts of it that do not touch on the *Ferguson* factors.

¶32. The *Ferguson* factors to consider where applicable in determining an equitable division of marital property, are:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
> a. Direct or indirect economic contribution to the acquisition of the property;
>
> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent of family duties and duration of the marriage; and
>
> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3. The market value and the emotional value of the assets subject to distribution.
>
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

11

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928. In the written order, the chancery court listed the ***Ferguson*** factors and stated that it considered the applicable ones, without making individualized findings regarding each factor. In the bench ruling, the chancellor also listed the ***Ferguson*** factors and stated that she applied the applicable factors and those for which she had received proof, but the bench ruling contained very little regarding specific findings.

*1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:*

*a. Direct or indirect economic contribution to the acquisition of the property;*

*b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent of family duties and duration of the marriage; and*

*c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.*

¶33. Evidence was given regarding specific employment and financial contributions of each party. Evidence was also given regarding contributions to the home and contributions to the education of the parties, as well as the length of the marriage. Evidence was given regarding marital fault, which may be considered with regard to the stability and harmony of the marriage. ***Lowrey v. Lowrey***, 25 So. 3d 274, 285 (Miss. 2009). The only specific finding regarding contributions that the court made was in the bench ruling in which the court noted that "this was a long marriage." The court made no other findings regarding any of these issues, despite ample evidence presented.

12

*2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise*

¶34. Evidence existed that Carlos owned a 2019 Tundra and a 2017 Ram at the time of separation that were gone at the time of trial. Testimony also existed that Nancy had given away a piece of furniture. The chancellor found that

> I didn't see anything disposed of as reference to assets, which is part of this ***Ferguson*** factors except for maybe a chair, maybe a couch or a chair or something that was given away. Also, the Court keeps in mind that there was a vehicle that was used too on the other side where there was money gotten from the sale of it. So six in one hand, half a dozen in the other.

The Ram was sold for $45,000, the Tundra was totaled, and no testimony given regarding insurance money received for it. The total of all the household goods, including furniture, was valued by the court at $12,000. The court appeared to take only one of the vehicles into consideration and found it equal to the disposition of one chair. The court also made no findings regarding the IRAs Carlos admitted to having at the time of separation that he later closed. It did not make any findings regarding whether Carlos's using two vehicles to settle his paramour's debt constituted disposing of marital assets.

*3. The market value and the emotional value of the assets subject to distribution*

¶35. The chancery court did assign market value to each item or group of items it found to be marital property. Evidence was provided regarding the emotional value of the home, but the chancery court did not make any findings regarding emotional value.

*4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the*

13

*parties and property acquired by inheritance or inter vivos gift by or to an individual spouse*

¶36. Evidence was given regarding the value of the Camaro and Wildcat, which the court deemed Carlos's property, but the court did not make specific findings regarding their value.

*5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution*

¶37. Evidence was given regarding a line of credit on the marital home that was to help Kylie's business. No specific findings were made regarding these issues.

*6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties*

¶38. The chancellor summarily stated that alimony was not necessary because of her conclusion that the equitable division of the property provides for both parties.

*7. The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity*

¶39. Evidence was provided regarding assets, income, and earning capacity, as well as the parties' financial needs. The chancellor appeared to find that Nancy's PERS retirement income of $2367 and Carlos's income from his painting business, which amounts to $5335 after subtracting his business expenses from his business income, offset. She did not make findings regarding Carlos's retirement income, his Social Security, or Nancy's potential Social Security. She did not make findings regarding the testimony that Nancy had to retire before the separation to have the time to care for Emily's multitude of medical needs, impacting her earning capacity. The chancellor made no findings regarding the necessity or reasonableness of each party's personal expenses, which includes the large amount of money

14

that Carlos spends on his cars. The chancery court made no other specific findings regarding this factor.

*8. Any other factor which in equity should be considered*

¶40. Evidence was produced that Emily lived with Nancy and that Nancy supported Emily physically and financially. Evidence existed that she was doing so on a limited income, even including Emily's small income of less than $1000 per month. It is appropriate for the trial court to consider this in equity, especially given that it is laudable that Nancy cares for and financially provides for her adult disabled child instead of relegating Emily a ward of the State. Evidence was produced that Kylie and her family temporarily lived with Nancy. Evidence was produced that Nancy was limited in her earning capacity due to Emily's care needs. The chancery court made no specific findings regarding these factors.

¶41. "A chancellor is required to make findings of fact regarding all applicable *Ferguson* factors." *Lowrey*, 25 So. 3d at 285. This Court later clarified that "[w]hile chancellors need not make 'findings as to each and every factor set forth in *Ferguson*,' they cannot simply 'mention the guidelines' and state they are 'following them and applying them to the facts of the case.'" *Lee v. Lee*, 78 So. 3d 326, 329 (Miss. 2012) (footnotes omitted). Fairness, rather than equality, is the primary consideration in equitable marital division. *Lowrey*, 25 So. 3d at 285. In *Lowrey*, the chancellor made findings that were not supported by the record, "failed to identify the specific factors and weights given" the factors, and "failed to explain why certain factors were deemed inapplicable." *Id.* The Court held that "failure to consider all applicable *Ferguson* factors is error and mandates reversal." *Id.* at 286. The

same occurred in this case. While some of the chancellor's findings are supported by the record, namely the value of the marital home and the market value of the personal property, others are not. The chancellor's finding that Nancy's income and Carlos's income essentially offset each other is not supported by the record. Carlos generates thousands more in income than does Nancy, and Nancy runs a monthly deficit, unlike Carlos. The chancery court gave no explanation for this finding. Likewise, the finding that the dissipation of two relatively newer, expensive vehicles that were marital property offset the dissipation of a chair is not supported by the record. The record indicates that the chair was likely worth tens of thousands of dollars less than the vehicles. Furthermore, the chancellor made essentially no findings on factors one, five, and eight, despite receiving ample evidence regarding each. Nor did the chancellor explain the weight given to each factor. The chancellor in this case likewise failed to explain why she deemed certain factors inapplicable, aside from a generalization that some did not have evidence presented. But that notation is also suspect because it appears from the record that at least some evidence was presented that was relevant to each factor.

¶42. In sum, the chancery court made very few factual findings, and most of those are not supported by substantial evidence in the record. Indeed, only the findings regarding market value of the property and the fact that the marriage was long are supported by substantial evidence in the record. This Court therefore reverses the chancery court judgment on the issue of the equitable division of property and remands the case with instructions for the chancellor to make specific findings of fact regarding each applicable *Ferguson* factor and

16

for the chancellor to rectify the findings that are unsupported by the evidence, such as that the parties' vastly different incomes somehow offset one another.

## C.     *Alimony*

¶43.     The chancellor summarily stated that alimony was not necessary because the equitable division of property adequately supported the parties. The chancellor made no specific findings regarding alimony and did not appear to even consider the *Armstrong* factors. *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993). Because we reverse and remand based on the division of property, we need not specifically address this issue. Further, because the chancellor's summary denial of alimony was based on an unsupported division of property, the chancellor may consider this equitable matter on remand.

## D.     *Child Support*

¶44.     The chancery court held that it did not have the authority to award child support for Emily, the parties' adult disabled child who was born disabled. Nancy is the primary physical and financial provider for Emily, preventing the State from becoming Emily's primary provider. Emily's care and needs and Nancy's care of Emily are certainly facts that the chancery court could consider under factors 7 and 8 of the *Ferguson* factors. Because the chancery court failed to consider this issue in the distribution of property and because this Court remands on the division of property issue, the chancery court may consider Emily's care on remand under the *Ferguson* factors.

## E.     *Use of Marital Home*

¶45.   Nancy argues that the chancery court erred by not creating a viable way financially for Nancy to remain in the home. This Court need not address this issue. The issue of how to award or split the home is subsumed in the analysis of the equitable division of assets. The chancery court made no findings regarding emotional attachments to the home or Nancy providing for Emily's needs. The chancery court may consider this issue on remand within the *Ferguson* factors.

### F.   Marital Assets

¶46.   Nancy argues that the chancery court erred by deeming the 2018 Armada and the 1976 Triumph to be marital property. They were acquired during the marriage, titled only in Carlos's name, and evidence exists that the titles were transferred to Nancy in settlement of her alienation-of-affection lawsuit against Carlos's paramour, with Carlos essentially giving Nancy these vehicles for the benefit of his paramour. This Court need not address this specific issue, as the determination of what constitutes marital property and dissipation of marital assets is subsumed in the analysis of the equitable division of property. The chancery court may consider this issue on remand.

### G.   Attorneys' Fees

¶47.   Nancy argues that the chancery court erred by denying her an award for attorneys' fees. The chancellor found that Nancy's request for general and specific relief did not sufficiently include attorneys' fees. Carlos's brief asserts that Nancy failed to demonstrate an inability to pay, despite the fact that the chancery court made no findings either way on inability to pay.

¶48. This Court has determined that the scope of the statute allowing chancellors to "make all orders touching the maintenance and alimony" "is broad and includes granting chancellors the authority to award attorneys fees in divorce proceedings." *Dillon v. Dillon*, 498 So. 2d 328, 331 (Miss. 1986). "[A] question concerning attorneys fees is largely a matter entrusted to the sound discretion of the trial court." *Id.* Consequently, the authority to award attorneys' fees is found within the broad equitable powers of the chancery court in divorce proceedings. While pleadings must set forth specific claims of relief, a court may grant any relief supported by the proof and within the jurisdiction of the court, even if it is not demanded. *Smith v. Smith*, 607 So. 2d 122, 127 (Miss. 1992). However, "parties are entitled to notice and due process." *Griffin v. Griffin*, 579 So. 2d 1266, 1268 (Miss. 1991). A general prayer for relief may suffice as proper notice in certain cases. *See Smith*, 607 So. 2d at 127. Because attorneys' fees fall within the general equitable power of the chancery court in divorce cases and because we remand the case based on the issue of the equitable division of assets, the chancery court is free to consider this issue on remand.

## CONCLUSION

¶49. Because the chancery court failed to make sufficient findings of fact with regard to each applicable *Ferguson* factor and because many of the findings the chancery court did make are not supported by substantial evidence, this Court reverses the portion of the chancery court's order regarding the marital estate and financial issues and remands the case to the chancery court for further proceedings on these issues. On remand, the chancellor

19

should make findings on each applicable and relevant *Ferguson* factor, but, pursuant to *Lee*, is not required to make specific findings on factors that are inapplicable to the case.

¶50.   **REVERSED AND REMANDED.**

**RANDOLPH, C.J., COLEMAN, P.J., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**