997 So.2d 270 (2008)
Randy SCOTT, Appellant
v.
CITY OF GOODMAN, Mississippi, Dickerson Petroleum, Inc. d/b/a BP Convenience and Service Station and Melvin Williams, Appellees.
No. 2007-CA-01403-COA.
Court of Appeals of Mississippi.
December 16, 2008.
*271 Marshall E. Sanders, attorney for appellant.
Daniel J. Griffith, Cleveland, Jan F. Gadow, Thomas Y. Page, Jackson, attorneys for appellees.
Before LEE, P.J., BARNES, ROBERTS and CARLTON, JJ.
*272 BARNES, J., for the Court.
¶ 1. Randy Scott filed a complaint in the Circuit Court of Holmes County alleging that Dickerson Petroleum, Inc. d/b/a BP Convenience and Service Station breached its duty to protect Scott from, or had negligently caused, a physical attack by Officer Melvin Williams, an on-duty police officer of the City of Goodman, on Dickerson Petroleum's property. Scott subsequently amended his complaint to add Officer Williams and the City of Goodman as defendants. Following discovery, Officer Williams was granted summary judgment, dismissing the claim against him with prejudice based on the uncontested fact that Officer Williams was acting in the scope of his employment. Dickerson Petroleum also filed a motion for summary judgment, which was granted on April 28, 2006. Following a bench trial which resulted in a final judgment in favor of the City of Goodman, Scott filed his notice of appeal on August 13, 2007.

SUMMARY OF FACTS
¶ 2. Approximately one month prior to the incident at issue, Officer Williams observed Scott driving erratically and attempted to arrest him for driving under the influence (DUI), reckless driving, and resisting arrest. However, Scott fled the scene, eluding Officer Williams. Scott later contacted the police chief, with whom he was acquainted, and agreed to come in on a cash bond. Scott was found guilty on all charges, fined $2,600, and had his driver's license suspended.
¶ 3. Before midnight on February 26, 2003, Officer Williams was at the BP store on Highway 17 and Interstate 55 in Pickens, Mississippi. Officer Williams, who was on duty at the time, was purchasing some refreshments.[1] Also present at the store were two BP employees, Melvin Jordan and Marjorie Freeman, as well as two truck drivers, Jimmy Lester and Rodney Harrison. Officer Williams was standing near the doorway talking to the truck drivers when Scott entered with two of his friends, Lamarcus Williams (Lamarcus) and Jonas Edwards. Officer Williams greeted them, and Scott replied, "I don't f____k with you." Scott, however, testified that Officer Williams greeted him with "you're the man I've been looking for." Scott and his friends then proceeded to the cooler at the back of the store to obtain refreshments. When they came back to the front to purchase their drinks, Officer Williams asked, "Did you just say what I thought you said?" Scott replied: "You heard me. I said I don't f____k with you." Officer Williams told Scott that he must have him "mixed up with someone else," to which Scott replied, "No, motherf____ker, I know you."[2] Other witnesses testified that Officer Williams said something to the effect of "do you know who I am?"
¶ 4. Scott "started back toward" Officer Williams, who put out his hand toward Scott's chest, and said "Hold up, sir." As Scott continued walking, his chest made contact with Williams's hand, and Scott slapped the hand down, saying, "Motherf____ker, get your hands off me." Freeman and both truck drivers corroborated this version of events stating that Scott appeared to be the aggressor. However, Scott and two witnesses, Jordan and Lamarcus, testified that Scott was only attempting *273 to exit the store, but Officer Williams blocked the entrance. Scott also stated that he thought the door was locked or jammed, but evidence refuted this claim.
¶ 5. Officer Williams stated that, immediately after this altercation, Scott put his hands into his pockets and appeared to be searching for something, which prompted Officer Williams to retrieve his weapon from his holster and attempt to radio for assistance from other law enforcement officers. There was conflicting testimony from witnesses whether Scott actually had pockets, and whether his hands were in his jacket pockets or pants pockets. However, video surveillance photos depicted that Scott was wearing a jacket and appeared to have both hands in his pockets as he was advancing toward Officer Williams. We also note that Scott, in his statement to the police on March 10, 2003, stated that "I had two dollars in my pocket."
¶ 6. When Scott continued to move toward Officer Williams, the officer grabbed Scott in a "bear hug" in order to pin Scott's arms to his side, presumably to keep him from retrieving anything from his pockets, and a tussle ensued. Scott pulled away, and fearing that Scott had a weapon, Officer Williams discharged his weapon, shooting Scott in the right leg.[3] Scott stumbled outside and resisted Officer Williams's repeated attempts to handcuff him. After Scott failed to obey commands to stop resisting, Officer Williams sprayed Scott in the face with a chemical agent and then handcuffed him. After law enforcement and emergency medical personnel arrived, Scott was transported to University Medical Center in Jackson, Mississippi for surgery on his leg.
¶ 7. Scott filed a complaint in the Circuit Court of Holmes County alleging that Dickerson Petroleum had breached its duty to protect Scott from, or had negligently caused, the physical attack by Officer Williams. Scott subsequently amended his complaint to add Officer Williams and the City of Goodman as defendants. Officer Williams filed a motion for summary judgment stating that, under the Mississippi Tort Claims Act (MTCA), he could not be held personally liable as he was acting within the course and scope of his police duties at the time of the shooting. The circuit court granted Officer Williams's motion for summary judgment on May 8, 2006, dismissing the claim against him with prejudice.[4] Dickerson Petroleum filed a motion for summary judgment, which was granted on April 28, 2006. A bench trial was held February 8-9, 2007, which resulted in a final judgment in favor of the City of Goodman. Scott now appeals the trial court's rulings.

I. Whether the trial court erred in granting summary judgment to Dickerson Petroleum.
¶ 8. Scott argues that the trial judge erred in granting summary judgment to Dickerson Petroleum, the owner of the premises where the shooting occurred. Due to his status as an invitee, Scott maintains that Dickerson Petroleum owed him a duty of reasonable care to *274 protect him from an unlawful attack by a third party-Officer Williams. Scott argues that, as Dickerson Petroleum was aware of frequent criminal activity on the premises, the shooting by Officer Williams was foreseeable and steps should have taken to prevent such an incident.
¶ 9. "The standard of review by which an appellate court reviews the grant or denial of a motion for summary judgment under Rule 56(c) of the Mississippi Rules of Civil Procedure is de novo." Grammar v. Dollar, 911 So.2d 619, 621-22(¶ 4) (Miss.Ct. App.2005) (citing McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002)). In determining whether a motion for summary judgment was properly granted, we must view the evidence "in the light most favorable to the party against whom the motion has been made." Weatherly v. Union Planters Bank, N.A., 914 So.2d 1222, 1224(¶ 9) (Miss.Ct.App.2005) (citation omitted). "This Court will only reverse a trial court's decision to grant summary judgment if triable issues of fact exist." Johnston v. Palmer, 963 So.2d 586, 592(¶ 11) (Miss.Ct.App.2007) (citing Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1041(¶ 8) (Miss.2003)). "If, in this view, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, summary judgment should forthwith be entered for the movant." Bullock v. Life Ins. Co. of Miss., 872 So.2d 658, 660(¶ 6) (Miss.2004) (citing Hurdle v. Holloway, 848 So.2d 183, 185(¶ 4) (Miss. 2003)).
¶ 10. For Scott's negligence claim "to survive summary judgment," he had to "set forth specific facts sufficient to establish the existence of each element of negligence-duty, breach, causation and damages." See Albert v. Scott's Truck Plaza, Inc., 978 So.2d 1264, 1266(¶ 6) (Miss.2008) (citing Simpson v. Boyd, 880 So.2d 1047, 1050(¶ 12) (Miss.2004)). "The first step in determining the duty owed to an individual injured on the premises of another is to determine whether that individual, at the time of injury, was an invitee, licensee, or a trespasser." Davis v. Christian Bhd. Homes of Jackson, Miss., Inc., 957 So.2d 390, 399(¶ 17) (Miss.Ct.App. 2007). A person is considered an invitee if he "enter[s] the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." Titus v. Williams, 844 So.2d 459, 467(¶ 29) (Miss.2003) (citing Gatewood v. Sampson, 812 So.2d 212, 220(¶ 13) (Miss. 2002)). As a customer of the BP store, it is undisputed that Scott was an invitee at the time of the incident. See Thomas v. Smith, 786 So.2d 418, 420(¶ 6) (Miss.Ct. App.2001). Therefore, Dickerson Petroleum, as the owner of the premises, owed a duty to Scott "to exercise reasonable care to keep the premises in a reasonably safe condition." See Almond v. Flying J Gas Co., 957 So.2d 437, 439(¶ 7) (Miss.Ct.App. 2007).
¶ 11. However, "[w]hen a dangerous condition on the premises ... is caused by a third person unconnected with the store['s] operation, the burden is upon the plaintiff to show that the operator had actual or constructive knowledge of its presence." Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992). "In order to establish legal causation, or foreseeability, in cases of assault by a third person, one must show actual or constructive knowledge of the assailant's violent nature, or actual or constructive knowledge that an atmosphere of violence exists on the premises." Thomas v. The Columbia Group, LLC, 969 So.2d 849, 854(¶ 20) (Miss.2007). "[T]he criminal acts of a third party may *275 be deemed reasonably foreseeable if the premises owner had cause to anticipate such acts." Davis, 957 So.2d at 401(¶ 22). Scott maintains that as Dickerson Petroleum was aware of the frequent criminal activity at their store, they owed him a duty to protect him from "other patrons."[5] "Evidence of an existing atmosphere of violence may include `the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises.'" Thomas, 969 So.2d at 854(¶ 20) (quoting Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991)). Based on our review, Scott has not sufficiently demonstrated any "overall pattern of criminal activity prior to the event in question," nor has he demonstrated any "frequency of criminal activity on the premises" sufficient to establish an atmosphere of violence.
¶ 12. Even if there were sufficient evidence to prove "an atmosphere of violence," Officer Williams was not just another patron; he was a duly-appointed law enforcement officer. We do not find it reasonable to claim that Dickerson Petroleum could have foreseen that a uniformed, on-duty police officer would be a danger or threat to a patron in its store. In addition, Scott, by his own acts (cursing at the officer and slapping down the officer's hand), contributed to the ensuing altercation. Consequently, we cannot see where the actions by Officer Williams would have been reasonably foreseeable by Dickerson Petroleum and find that the trial judge did not err in her grant of summary judgment in favor of Dickerson Petroleum.
II. Whether there is a lack of substantial, credible, and reliable evidence to support the trial court's finding that the evidence was not sufficient to sustain a claim of reckless disregard of Scott's rights by Officer Williams and the City of Goodman.
¶ 13. "[W]henever we are called upon to consider the findings of fact of a circuit judge sitting without a jury, that circuit judge is entitled to the same deference concerning his/her findings of fact as is afforded to a chancellor, who almost always sits, without a jury." City of Greenville v. Jones, 925 So.2d 106, 109(¶ 8) (Miss.2006). "The MTCA is the exclusive remedy for filing a lawsuit against governmental entities." City of Jackson v. Powell, 917 So.2d 59, 69(¶ 36) (Miss.2005). The Mississippi Supreme Court "reviews errors of law de novo, including the proper application of the MTCA." Phillips v. Miss. Dep't of Pub. Safety, 978 So.2d 656, 660(¶ 13) (Miss.2008). The MTCA provides that:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim
. . . .
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.
Miss.Code Ann. § 11-46-9(1)(c) (Supp. 2008) (emphasis added). Scott argues that *276 Officer Williams's use of deadly force was unwarranted in the situation and constituted reckless disregard for the safety of Scott. The circuit court found immunity for the City of Goodman based on two points: (1) that "gross negligence" and "reckless disregard" are not one and the same for the purposes of the law enforcement exception, and (2) that there was insufficient evidence to raise a claim of reckless disregard. The City of Goodman argues that the first issue is procedurally barred as Scott failed to specifically set forth this law enforcement exception claim in his appeal. We reject this argument. First, Scott did brief this Court on the issue of whether "reckless disregard" and "gross negligence" are the same. Secondly, central to the issue before the trial judge was that the amended complaint filed with the trial court alleged that Officer Williams was "grossly negligent and acted with complete disregard for the Plaintiff[.]" Therefore, Scott did not specifically allege that Officer Williams acted with "reckless disregard." However, Scott argues that what was alleged in the complaint was actually a higher standard than "reckless disregard."
¶ 14. "It is well-settled law in Mississippi that plaintiffs are bound by what is alleged in the complaint, absent a subsequent amendment or modification." Powell v. Clay County Bd. of Supervisors, 924 So.2d 523, 527(¶ 11) (Miss.2006). "[E]ven under the liberal pleading requirements of Rule 8(a) [of the Mississippi Rules of Civil Procedure], a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Penn Nat'l Gaming, Inc. v. Ratliff, 954 So.2d 427, 432(¶ 11) (Miss.2007) (quoting United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004)) (emphasis added). However, the pleadings need only "provide sufficient notice to the defendant of the claims and grounds upon which relief which is sought." Estate of Stevens v. Wetzel, 762 So.2d 293, 295(¶ 11) (Miss.2000). "[A] basic objective of the rules is to avoid civil cases turning on technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim...." 5 Wright and Miller, Federal Practice and Procedure: Civil 3d § 1215 pp. 172-73 (2004). Officer Williams and the City of Goodman were aware of which statute and legal standard under which they were being charged. Although Scott's complaint did not specifically track the language of the statute, we do not find it fatal to the issue of whether Officer Williams and the City of Goodman were liable under the MTCA. Rule 8 does not have "a magic words requirement." Smith v. Smith, 607 So.2d 122, 127 (Miss. 1992).
¶ 15. Therefore, we look to whether the evidence was sufficient to warrant the trial judge's conclusion, as the trier of fact, that Officer Williams's behavior did not constitute "reckless disregard" under the MTCA. The Mississippi Supreme Court has held that although "reckless disregard" encompasses "gross negligence," "reckless disregard is a higher standard than gross negligence by which to judge the conduct of officers." Miss. Dep't of Pub. Safety v. Durn, 861 So.2d 990, 994(¶ 10) (Miss.2003). "Reckless disregard... embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Phillips, 978 So.2d at 661(¶ 19). Therefore, "[r]eckless disregard is more than mere negligence, but less than an intentional act." Durn, 861 So.2d at 994(¶ 10) (citing City of Jackson v. Brister, 838 So.2d 274, 281(¶ 23) (Miss.2003)). Scott's *277 own expert witness, Lindsey Horton, admitted in his pretrial affidavit, that Officer Williams's shooting of Scott was only negligent.
¶ 16. Scott maintains that Officer Williams's actions were unwarranted and excessive. He also claims that the evidence is "virtually undisputed" that he was "merely attempting to leave the premises." We, on the other hand, find evidence to support the trial court's finding that, although it is clear from the facts that Officer Williams intended to harm Scott, "Officer Williams's conduct arose as the result of the hostility and aggression exhibited by Scott" and was a result of the "tense and escalating situation." Witnesses testified that Scott cursed at Officer Williams. Scott moved toward Officer Williams, and when Officer Williams attempted to get him to back off by putting out his hand, Scott knocked his hand down, which could have been considered an assault upon a police officer, giving sufficient reason to arrest Scott. Mark Farrell, the expert witness for the City of Goodman, testified that officers are to exercise discretion and judgment regarding the appropriate use of force under circumstances which are often potentially dangerous, tense, uncertain, and rapidly evolving. Officer Williams stated that he was acting against what he perceived to be a deadly threat to his person. Under the tense circumstances outlined at trial and in the record, we affirm the trial judge's finding that, based on the "totality of the circumstances," Officer Williams's conduct was a reasonable reaction to what he perceived to be a potentially dangerous situation.
¶ 17. The trial judge did not specifically address the conduct surrounding the use of pepper spray after the shooting, except to note Horton's testimony that this action "added insult to injury." However, based on the evidence presented above, and the fact that Scott continually attempted to resist Officer Williams, even after the shooting, the trial judge's general finding that Officer Williams's conduct failed to rise to the level of "reckless disregard" is sufficient to dispose of these contentions as well. Accordingly, we affirm the judgment of the circuit court.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] We note that Officer Williams, a City of Goodman police officer, was outside of his jurisdiction; however, testimony revealed that the law enforcement in that area often assisted other jurisdictions due to their limited resources.
[2] One witness, Scott's friend, Lamarcus, said that Scott was not using profane language. However, Scott admitted that he cursed in front of Officer Williams.
[3] According to his medical records, Scott sustained a gunshot wound to his right thigh, descending downward to his knee.
[4] Scott does not address Officer Williams's dismissal as an issue as it was properly found that Officer Williams could not be held personally liable for acts within the course and scope of his duties as a law enforcement officer. See Miss.Code Ann. § 11-46-7(2) (Rev.2002).
[5] Testimony regarding the criminal activity was limited to Officer Williams's testimony regarding two armed robberies in the previous month, Scott's testimony that the BP station was frequently robbed, and Kirk Dickerson's testimony that (based on his knowledge as the store owner) the BP had been robbed only once.