MAXWELL, J„
for the Court:
¶ 1. L.T. Land and Gravel, LLC (L.T. Land) sued Jimmy McNabb for misrepresentation. L.T. Land alleged it paid McNabb $8,000 for a 1984 Mack truck, based on McNabb’s claim he had rebuilt the lower half of the engine — an engine L.T. Land quickly learned required a complete overhaul. After a bench trial, the Marion County Circuit Court denied the misrepresentation claim, finding L.T. Land failed to prove McNabb’s representations about his repairs were untrue. But the circuit court awarded L.T. Land $8,461.08 solely based on its finding that McNabb breached the implied warranty of fitness for a particular purpose. We find this specific warranty theory was neither plead nor tried by implied consent under Mississippi Rule of Civil Procedure 15(b). And, even if it had been, we find the evidence does not support the circuit court’s finding McNabb was in breach. We reverse the $8,461.08 award to L.T. Land and render judgment in favor of McNabb.
FACTS AND PROCEDURAL HISTORY
¶ 2. Edward Lee owns L.T. Land, a timber company that also sells real estate and gravel. McNabb is a recently retired diesel mechanic with almost forty-years experience. McNabb had performed mechanic work for Lee in the past.
¶ 3. McNabb rebuilt the lower half of the engine of a 1984 Mack truck and then put it up for sale. On September 28, 2008, Lee learned the truck was for sale and contacted McNabb. Lee told McNabb he intended to use the truck to haul lumber and gravel. McNabb told Lee about the repairs he made to the lower half of the engine and how, since it was rebuilt, he had only used the truck once to haul a dozer forty miles. Lee bought the truck for $8,000.
¶ 4. Over the next five days, L.T. Land used the truck ten times to haul timber. L.T. Land employees testified they could smell burning oil and see smoke emanating from the truck. They had to fill the truck with oil constantly, adding a total of eight- and-a-half gallons to keep the oil tank full. On October 1, 2008, Lee told McNabb about the smoke and the oil. McNabb responded the engine was still “breaking in” and to keep driving the truck. But the smoking and the need for oil only got worse. Lee took the truck to a repair shop, which charged L.T. Land $461.08. *1142 The repair-shop owner testified the truck was running badly when Lee brought it in and needed a complete overhaul.
¶ 5. On March 25, 2009, L.T. Land sued McNabb seeking damages for misrepresentation. Both parties agreed to try the case without a jury. The circuit judge appointed a special master to hear the case. Lee testified the purpose of buying the truck “was to pull timber off my job to the mills.” When asked if this purpose was evident to McNabb, Lee responded, “Oh, by all means, yes, sir.” Lee further testified he bought the truck based on McNabb “telling [him] that he had done the bottom half, and the engine was ready to go, didn’t have but 40 miles on it.” Because McNabb had done work for L.T. Land before, Lee “just felt safe about it.” McNabb was asked if he was “aware of the particular purpose for this truck that Mr. Lee was going to use it for was to haul timber, correct?” He responded, “Well, not altogether. He told me he may haul gravel with it and may haul some timber.” There was no testimony that Lee specifically requested McNabb select a truck fit for either of these particular purposes.
¶ 6. Though the case was tried on the misrepresentation claim, in its closing argument, L.T. Land argued for the first time the implied warranty of merchantability and the implied warranty of fitness of a particular purpose applied to the sale of the truck.
¶ 7. The special master recommended the circuit court deny L.T. Land’s misrepresentation claim because L.T. Land failed to prove what McNabb told him was not true.[1] The special master noted L.T. Land’s complaint sought recovery based solely on misrepresentation and did not allege breach of implied warranties. But the special master reasoned that because McNabb did not object to evidence about Lee’s reliance on McNabb’s experience to purchase the truck and McNabb’s knowledge of the purpose for buying the truck, under Mississippi Rule of Civil Procedure 15(b), McNabb had impliedly consented to try the implied-warranty claims in addition to the misrepresentation claim.
¶ 8. The special master rejected L.T. Land’s implied-warranty-of-merchantability claim because this warranty only applied to “merchants” and McNabb did not meet the statutory definition of a “merchant.”[2] Miss.Code Ann. §§ 75-2-104(1) (Supp.2011), 75-2-814 (Rev.2002). But the special master concluded McNabb had breached the implied warranty of fitness because: (1) Lee had told McNabb that L.T. Land was purchasing the truck to haul timber; (2) Lee relied on McNabb’s experience and representation that the lower half of the engine had been rebuilt and used only once to haul a dozer; and (3) the truck had extensive engine damage.
¶ 9. Over McNabb’s objection, the circuit court adopted the special master’s report. It found, by failing to object to L.T. Land’s breach-of-warranty evidence, McNabb impliedly consented to amend the complaint. It further found McNabb breached the implied warranty of fitness for a particular purpose. The circuit court awarded L.T. Land the cost of the truck plus the cost of repair, $8,461.08 total.
LAW AND DISCUSSION
¶ 10. The only basis for the circuit court’s award was its finding that L.T. Land breached the implied warranty of *1143 fitness for a particular purpose. This specific warranty theory was not pled. Nor was it tried by implied consent under Rule 15(b).
I. The Complaint
¶ 11. The complaint alleged: (1) L.T. Land bought the truck relying on McNabb’s “promise he had rebuilt the bottom half of the engine”; (2) after only fourteen loads, “the engine failed”; (3) upon investigation, “it was determined that the bottom half of the engine had NOT been rebuilt as claimed”; (4) McNabb made false statements and material misrepresentations that induced L.T. [Land] to purchase the Mack truck in question”; and (5) “[a]s a direct and proximate cause of [McNabb’s] false statements and material misrepresentations, L.T. [Land] spent $8,000.00 for the truck and has spent additional funds in garage and mechanics’ fees.”
¶ 12. The circuit court correctly held “the Complaint in this matter did not include a claim for breach of implied warranty.” We recognize that under Rule 8 of the Mississippi Rules of Civil Procedure, L.T. Land did not have to use the magic words “implied warranty of fitness for a particular purpose.” Scott v. City of Goodman, 997 So.2d 270, 276 (¶ 14) (Miss.Ct.App.2008) (citing Smith v. Smith, 607 So.2d 122, 127 (Miss.1992)). But “[e]ven under the liberal pleading requirements of Rule 8(a) of the Mississippi Rules of Civil Procedure, a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.” Id. (quoting Penn Nat’l Gaming, Inc. v. Ratliff, 954 So.2d 427, 482 (¶ 11) (Miss.2007)). The elements of breach of implied warranty of fitness for a particular purpose are: (1) actual or constructive knowledge by the seller of the buyer particular purpose for purchasing the goods, (2) reliance by the buyer on the seller’s skill or judgment to select suitable goods, and (3) the good’s unfitness for the particular purpose. Moss v. Batesville Casket Co., 935 So.2d 393, 399 (¶ 20) (Miss. 2006) (citing Garner v. S & S Livestock Dealers, Inc., 248 So.2d 783, 785 (Miss.1971)). The dissent finds the allegations in the complaint sufficiently formed the basis of a claim for breach of implied warranty of fitness for a particular purpose. But no where in L.T. Land’s complaint does it reference L.T. Land’s stated purpose for purchasing the truck, McNabb’s knowledge of this purpose, McNabb’s selection of a suitable truck, L.T. Land’s reliance on McNabb’s selection, or that the truck was particularly, as opposed to generally, unfit for the intended purpose. Thus, even under our relaxed notice-pleading standards, McNabb’s complaint did not plead breach of this implied warranty.
II. Rule 15(b) Amendment
¶ 13. Though the complaint contained no implied warranty claims, the circuit court, relying on Rule 15(b) treated the claim of the implied-warranty of fitness for a particular purpose as if it had been pled based on L.T. Land’s questions at trial. Rule 15(b) permits trial courts to treat issues not pled but nonetheless tried “by expressed or implied consent of the parties” as if they had been raised in the pleadings. M.R.C.P. 15(b). “The purpose of the rule is to allow the course of the trial, rather than the formal pleadings, to control the outcome.” Flannery v. Carroll, 676 F.2d 126, 131 (5th Cir.1982) (applying the almost-identical Federal Rule of Civil Procedure 15(b)). Because McNabb failed to object to questions about L.T. Land’s stated purpose for buying the truck and its reliance on McNabb’s experience, the circuit court reasoned McNabb impli *1144 edly consented to the issues of the truck’s fitness for a particular purpose.
¶ 14. But implied consent “depends upon whether the parties recognize that a new issue was being litigated at trial.” McCarty v. Kellum, 667 So.2d 1277, 1283 (Miss.1995) (quoting Setser v. Piazza, 644 So.2d 1211, 1217 (Miss.1994)). “If a party fails to object because he does not recognize the significance of the evidence introduced, ... he cannot be said to have consented impliedly to the trial of the unpleaded issues suggested by it.” Shipley v. Ferguson, 638 So.2d 1295, 1800 (Miss.1994) (quoting Crawford v. Glenns, Inc., 876 F.2d 507, 513 (5th Cir.1989)). “[Ijnability to comprehend the significance of the evidence must be reasonable in the circumstances presented.” Id. “For example, implied consent is not found where evidence introduced is relevant to a pleaded issue and the nonobjecting party has no notice that the evidence is intended to raise a new unpleaded issue into the case.” Id. (finding no implied consent to try un-pled tax-exemption issue because evidence about tax exemption was relevant to the pled issue of child support); see also Cox v. S.B. Thomas Trust, 755 So.2d 52, 56-57 (¶¶ 15-16) (Miss.Ct.App.1999) (finding no implied consent to try unpled employer credit in worker’s compensation case because failure to object to questions about credit was reasonable under the circumstances).
¶ 15. Under the circumstances, we find it was reasonable for McNabb not to object to questions about McNabb’s knowledge of L.T. Land’s purpose of purchasing the truck and L.T. Land’s reliance. To prove misrepresentation, L.T. Land had the burden to show reasonable reliance on McNabb’s statements that he overhauled the engine and used the truck once to haul a dozer. See Horace Mann Life Ins. Co. v. Nunaley, 960 So.2d 455, 461 (¶ 20) (Miss.2007) (listing elements of negligent misrepresentation). We find the evidence about L.T. Land’s purpose for purchasing the truck to haul gravel and timber and reliance on McNabb’s statements about the work he had done to the truck and how the truck had been used since were relevant to L.T. Land’s misrepresentation claims. Accordingly, L.T. Land’s questions did not sufficiently notify McNabb that L.T. Land intended to introduce un-pled implied-warranty claims.
¶ 16. The warranty claims only became cognizable during L.T. Land’s closing argument, when L.T. Land, for the first time, expressly sought damages based on the implied warranties of merchantability and of fitness for a particular purpose. “But counsel’s closing argument is not evidence.” Berry v. Patten, 51 So.3d 934, 941 (¶ 31) (Miss.2010). Therefore, closing argument cannot form the basis for Rule 15(b) implied consent. See Deere & Co. v. Johnson, 271 F.3d 613, 621-23 (5th Cir.2001) (finding Rule 15(b) amendment after close of trial was abuse of discretion, which violated due process by denying the other side an opportunity to present a defense); see also Am. Nat’l Bank of Jacksonville v. Fed. Deposit Ins. Corp., 710 F.2d 1528, 1539 n. 13 (11th Cir.1983) (noting that raising an issue in closing argument is not proof of implied consent as other party never had an opportunity to present evidence on this issue).
¶ 17. McNabb reasonably failed to recognize L.T. Land’s introduction of unpled implied-warranty claims. Thus, it was error to construe his failure to object to certain questions about L.T. Land’s purpose for purchasing the truck as implied consent to try additional warranty claims. We find the circuit court abused its discretion when it considered L.T. Land’s unpled warranty claims under Rule 15(b) and based its $8,461.08 judgment on an implied *1145 warranty of fitness for a particular purpose.
III. Breach of the Implied Warranty of Fitness for a Particular Purpose
¶ 18. Even had L.T. Land pled breach of the implied warranty of fitness for a particular purpose, we find the circuit court erred in finding this warranty arose and was breached.
¶ 19. The implied warranty of fitness for a particular purpose is codified in Mississippi Code Annotated section 75-2-815 (Rev.2002), which provides in part:
Except as otherwise provided in this section, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller’s skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.
Because the circuit court was the fact-finder, its judgment is binding “if supported by substantial evidence and not manifestly wrong.” Patel v. Telerent Leasing Corp., 574 So.2d 3, 6 (Miss.1990) (citations omitted); see Nelson v. City of Horn Lake ex rel. Bd. of Aldermen, 968 So.2d 938, 942 (¶ 11) (Miss.2007) (defining “substantial evidence” as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion or ... more than a ‘mere scintilla’ of evidence”).
¶ 20. Unlike the warranty of merchantability, a seller does not have to be a “merchant” to be subject to the implied warranty of fitness for a particular purpose. Miss.Code Ann. § 73-2-315; Lacy v. Morrison, 906 So.2d 126, 131 (¶ 14) (Miss.Ct.App.2004). For L.T. Land to recover under the theory of implied warranty of fitness for a particular purpose, the evidence must have been sufficient for the special master to find (1) McNabb, at the time of the contracting, had reason to know the particular purpose for which the goods were required; (2) the reliance by L.T. Land as buyer upon the skill or judgment of McNabb to select suitable goods, and (3) the goods were unfit for the particular purpose. Moss, 935 So.2d at 399 (¶ 20).
¶ 21. There is substantial evidence that McNabb had reason to know why L.T. Land was purchasing the truck — to haul timber and gravel. But substantial evidence does not support that L.T. Land specifically relied on McNabb to select a suitable truck for these intended purposes. “The warranty of fitness for a particular purpose involves selection, and to recover under this implied warranty, there must be some relationship between the reason the goods are unfit and the type or kind of goods selected for the particular purpose.” Garner, 248 So.2d at 785. Without selection by the seller, the implied warranty of fitness for a particular purpose does not arise. Moss, 935 So.2d at 399-400 (¶ 20) (quoting Garner, 248 So.2d at 785) (“The warranty of fitness for a particular purpose does not arise unless there is reliance on the seller by the buyer, and the seller selects goods which are unfit for the particular purpose.”).
¶ 22. In Gamer, because the plaintiff had not relied upon the selection by the seller, the Mississippi Supreme Court affirmed the post-trial dismissal of plaintiffs claim, finding:
The evidence did not justify the submission of this ease to the jury on the issue of warranty of fitness for a particular purpose. There is nothing in the evidence to show that the plaintiff relied upon the defendant to select either the kind of pigs, the size of pigs, or the particular individual pigs to be pur *1146 chased. The facts conclusively show that out of a pen of about thirty pigs the plaintiff made his own selection.
Garner, 248 So.2d at 785 (emphasis added).
¶ 23. The contrasting principle is emphasized in R. Clinton Const. Co. v. Bryant & Reaves, Inc., 442 F.Supp. 838, 845-46 (N.D.Miss.1977). In that case, the seller’s selection of the unfit goods led to its breach of the implied warranty of fitness for a particular purpose:
Clinton, as plaintiff-buyer, after designating the quality of antifreeze desired, left selection of the particular goods to the defendant-seller, in reliance on the latter’s skill and judgment facts of which the defendant was well aware, and concerning which defendant interposed neither disclaimer nor exclusionary limitation. Here, defendant proceeded to select a supplier of antifreeze to fill Clinton’s order therefor, and the material provided by defendant’s selection, adulterated by 1.24% Chloride solution, was unfit for the particular purpose of which defendant was aware at the time the sales agreement was made.
(Emphasis added). See also Massey-Ferguson v. Evans, 406 So.2d 15 (Miss.1981) (implied warranty of fitness for a particular purpose arose where farm-equipment provider told purchaser, who admittedly had never farmed before, what equipment to purchase).
¶ 24. Here, there is no indication of selection by McNabb. Lee testified that he bought the Mack truck because: (1) McNabb told him he rebuilt the lower half of the engine; (2) the rebuilt engine hauled a dozer forty miles; (3) McNabb had done work for Lee before; and (4) he “felt safe” about it. Although this testimony supports Lee’s reliance on McNabb’s skills as a mechanic, it does not show McNabb “selected” or furnished the particular Mack truck upon learning L.T. Land needed a truck to haul timber.
¶ 25. In Lacy, the buyer of a used truck, Lacy, argued the seller, Morrison, breached the implied warranty of fitness for a particular purpose. Lacy, 906 So.2d at 130-31 (¶ 13). Lacy told Morrison that he intended to use the truck to haul a horse trailer. Morrison, “in spite of knowing that the truck was not mechanically sound, assured him ‘that the vehicle had a new transmission and that it would be perfect for towing.’ ” Id. The Mississippi Supreme Court rejected Lacy’s argument. It found there was no breach of the implied warranty of fitness, because there was no evidence Morrison selected or assisted in selecting a truck unfit for pulling a horse trailer. Id. at 131 (¶ 15). Instead, the evidence showed “that Lacy was in apparent need of [a] truck to pull a horse trailer, and being a used car dealer, he knew what type of truck would satisfy that need. Upon discovering that Morrison owned such type of truck, Lacy contacted him to discuss purchasing it.” Id. at (¶ 16). Because Lacy “clearly purchased Morrison’s truck on his own initiative,” the supreme court found Lacy could not have relied on Morrison’s skill or judgment. Id. at (¶ 17). Without such reliance, no warranty of fitness for a particular purpose arose. Id.; see also Garner, 248 So.2d at 785 (no implied warranty of fitness for a particular purpose arose where the buyer made his own selection).
¶ 26. L.T. Land’s purchase is analogous to Lacy’s. Like Lacy, Lee took the initiative to purchase the one used truck McNabb had for sale. Lee did not ask McNabb to select for L.T. Land or even rebuild a used Mack truck to haul timber. Lee, who testified he owned eight diesel trucks in the past, bought the Mack truck for L.T. Land because he “felt safe” the truck would work — not because McNabb *1147 told him it was the type of diesel truck L.T. Land would need to haul timber.
¶ 27. With respect to the dissent, we find there is no substantial evidence of the type of reliance on selection necessary for the implied warranty of fitness for a particular purpose to arise. Thus, the circuit court erred by awarding L.T. Land $8,461.08 based on a breach of this implied warranty.
CONCLUSION
¶ 28. L.T. Land’s implied warranty claims were not properly before the circuit court. L.T. Land neither pled nor obtained McNabb’s implied consent to try these issues. Further, the evidence did not support a finding that McNabb breached the implied warranty of fitness for a particular purpose. With no other avenues of recovery raised on appeal, we reverse the judgment against McNabb for $8,461.08 and render judgment in his favor.
¶ 29. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS AND RUSSELL, JJ., CONCUR. LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION. CARLTON, J„ NOT PARTICIPATING.

. Because L.T. Land did not cross-appeal this decision, the denial of the misrepresentation claims is not before this court for review.

. L.T. Land did not cross-appeal this decision. Therefore, like the misrepresentation claim, the denial of this claim is not before this court for review.