# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-01703-SCT

*PENN NATIONAL GAMING, INC.*

*v.*

*JEFF RATLIFF, INDIVIDUALLY, AS NATURAL
SON OF EVADINE RATLIFF AND AS
ADMINISTRATOR OF THE ESTATE OF
EVADINE RATLIFF, DECEASED; CLYDE H.
RATLIFF, INDIVIDUALLY, AND AS HUSBAND
OF EVADINE RATLIFF, DECEASED; AND
JACKIE RATLIFF BARTLETT, INDIVIDUALLY,
AND AS NATURAL DAUGHTER OF EVADINE
RATLIFF, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2005 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN C. HALL, II |
| | ROBERT L. GIBBS |
| ATTORNEY FOR APPELLEES: | WAYNE E. FERRELL, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 01/04/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2005-IA-01704-SCT

*BSL, INC. d/b/a CASINO MAGIC BAY ST. LOUIS
AND DANNY McMANUS*

*v.*

*JEFF RATLIFF, INDIVIDUALLY, AS NATURAL*
*SON OF EVADINE RATLIFF AND AS*
*ADMINISTRATOR OF THE ESTATE OF*
*EVADINE RATLIFF, DECEASED; CLYDE H.*
*RATLIFF, INDIVIDUALLY, AND AS HUSBAND*
*OF EVADINE RATLIFF, DECEASED; AND*
*JACKIE RATLIFF BARTLETT, INDIVIDUALLY,*
*AND AS NATURAL DAUGHTER OF EVADINE*
*RATLIFF, DECEASED*

DATE OF JUDGMENT:             08/17/2005
TRIAL JUDGE:                  WINSTON L. KIDD
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:     ROBERT S. ADDISON
                              JASON H. STRONG
ATTORNEY FOR APPELLEES:       WAYNE E. FERRELL, JR.
NATURE OF THE CASE:           CIVIL - PERSONAL INJURY
DISPOSITION:                  REVERSED AND REMANDED - 01/04/2007

MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     These consolidated interlocutory appeals present several related issues: (1) whether adequate facts have been pled to support a finding that the parent company of a casino can be liable for breaching Mississippi's "dram shop" law, (2) whether Hinds County was a proper venue for this case, and (3) whether the facts of the case warrant its transferral to Hancock County either for lack of jurisdiction or under the doctrine of forum non conveniens. Finding that adequate facts have not been pled against the parent company, we hold that the claims against the parent company should be dismissed without prejudice. Because the failure to plead adequately indicates that the claim against the parent company

2

was not reasonable, there is no basis for venue in Hinds County and we hold that this matter should be transferred to Hancock County.

**Facts**

¶2.    A serious motor vehicle accident occurred between Alton Vaughn, of Pearl River County, and Evadine Ratliff and her husband Clyde Ratliff, also of Pearl River County, on Highway 43 in Hancock County on November 11, 2003. Vaughn, who was intoxicated, crossed his traffic lane and collided with the Ratliffs. The collision injured Clyde Ratliff and killed Vaughn and Evadine Ratliff. Vaughn had spent the preceding twelve hours at the Casino Magic-Bay St. Louis in Hancock County and allegedly consumed a large number of alcoholic beverages there.

¶3.    On December 23, 2003, the Ratliffs filed suit in the Hinds County Circuit Court against BSL, the Mississippi corporation that owns and operates Casino Magic, BSL employee Danny McManus, and the parent company of BSL, Penn National Gaming, Inc., a Pennsylvania corporation headquartered in Wyomissing, Pennsylvania. They allege that Vaughn was negligently served alcoholic beverages by the Casino Magic-Bay St. Louis casino in violation of this state's "dram shop law," Miss. Code Ann. § 67-1-83 (2006), which prohibits sale of alcohol to persons who are visibly intoxicated.[1] The gaming and retail

_____

[1]The statute reads in pertinent part: "It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs. It shall also be unlawful for the holder of any package retailer's permit to sell any alcoholic beverages except by delivery in person to the purchaser at the place of business of the permittee." Miss. Code Ann. § 67-1-83(1) (2006).

alcohol permits for the casino are held by BSL. It is undisputed that BSL's primary place of business is in Hancock County. Neither BSL nor Penn National has any offices or employees in Hinds County. Penn National has authorized an agent in Hinds County to accept service of process, and it was on that basis that the Ratliffs brought suit in Hinds County.

¶4. BSL and McManus moved to have the cause transferred to Hancock County. Penn National joined in the venue motion and filed a separate motion to dismiss under Miss. R. Civ. P. 12(b)(6). The trial court denied both motions, and BSL, McManus and Penn National filed petitions for interlocutory appeals from the trial judge's order. We granted the petitions and consolidated the proceedings for the purposes of appeal. *See* Miss. R. App. P. 3(b) & 5.

**Discussion**

A. **Whether the Trial Court Erred in Denying Penn National's Motion to Dismiss under Miss. R. Civ. P. 12(b)(6)**

¶5. This Court reviews de novo a trial court's grant or denial of a motion to dismiss. *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 988 (Miss. 2004). When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Id.* Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citations omitted).

4

Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss. *Id*.

### 1. Applicability of Mississippi's "Dram Shop" Statute to Penn National

¶6.   The Ratliffs' complaint alleges that Casino Magic and its employee McManus violated this state's prohibition of the sale of alcoholic beverages to persons who are "visibly intoxicated." However, the prohibition in Mississippi's "dram shop" statute creates liability for the permit holder and any employees of the permit holder.  Penn National, as the sole shareholder of permit-holder BSL, is neither.  This Court has long recognized "the legal integrity of the corporate entity and the concomitant limited liability of shareholders." *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1046 (Miss. 1989).  A corollary principle is that an individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 123 S. Ct. 1655, 1660, 155 L. Ed. 2d 643, 652 (2003).  Even when a parent corporation owns all of the stock of a subsidiary corporation, the parent does not, for that reason alone, own or have legal title to the assets of the subsidiary. *Id.*  The retail alcohol permit is a privilege granted by the state, held by the permittee, and cannot be transferred without the written consent of the State Tax Commission. *See* Miss. Code Ann. § 67-1-67 (2006).  As such, it is sufficiently similar to a corporate asset and cannot be attributed to a lawfully distinct corporate entity.

¶7.   The Ratliffs nevertheless argue that Penn National is "vicariously liable" for the actions of the casino's staff because the parent company sets the policies of the casino and is involved in the daily operations.  This claim amounts to an allegation that BSL is merely

5

the alter ego of Penn National, which would justify this Court's "piercing the corporate veil" and attributing the acts or omissions of BSL to Penn National.

## 2. Piercing the Corporate Veil for a Tort Claim

¶8.     Corporate veil claims are analyzed under state law. *United States v. Bestfoods*, 524 U.S. 51, 61-63, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998). We decline to pierce the corporate veil except in those extraordinary factual circumstances where to do otherwise would subvert the ends of justice. *Gray*, 541 So. 2d at 1046 (citing *Johnson & Higgins of Miss., Inc. v. Comm'r of Ins.*, 321 So. 2d 281, 284 (Miss. 1975)). Consequently, we have adopted the general rule that the corporate entity will not be disregarded in contract claims unless the complaining party can demonstrate (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder. *Gray*, 541 So. 2d at 1047.

¶9.     While we have never articulated whether a different standard applies to tort claims, precedent from other jurisdictions suggests that the same basic standard should apply. *See Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983) ("Although the attitude toward judicial piercing of the corporate veil is more flexible in tort, the legal precepts governing both tort and contract suits are substantially the same."). It is similarly accepted that some misfeasance other than tort itself must be shown. *See LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 295 (D. Del. 2000) ("In order to prevail on a claim to pierce the corporate veil . . . a plaintiff must prove that the corporate form causes fraud *or similar injustice*.") (emphasis added); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268-

6

69 (D. Del. 1989) ("The law requires that fraud or injustice be found in the defendant's use of the corporate form."). We therefore recognize that the corporate veil will not be pierced, in either contract or tort claims, except where there is some abuse of the corporate form itself.

### 3. Pleading Requirements

¶10. Pleadings under Mississippi Rule of Civil Procedure 8(a) must contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. M.R.C.P. 8(a). All pleadings shall be construed to insure substantial justice is done. M.R.C.P. 8(f). In construing our rules, we look for guidance to the federal cases since the M.R.C.P. were patterned after the Federal Rules of Civil Procedure. *White v. Stewman*, 932 So. 2d 27, 39 (Miss. 2006) ("federal practice should be our guide when considering questions arising under the Mississippi Rules of Civil Procedure."); *Bourn v. Tomlinson Interest, Inc.*, 456 So. 2d 747, 749 (Miss. 1984). A majority of federal circuits have held that "even under the liberal pleading requirements of Rule 8(a), a plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004); *see also Varljen v. Cleveland Gear Co.*, 250 F.3d 426, 429 (6th Cir. 2001) ("To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."); *Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985) ("A complaint must state either

7

direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory.").

¶11. In the present case, the Ratliffs have made only the barest assertion that BSL is merely an alter ego for Penn National. They allege that Penn National is involved in the daily operation of Casino Magic, because Penn National lists the Casino Magic casino as one of its properties on its website and that Penn National provides an employee handbook to Casino Magic employees. They further allege that Penn National and BSL are "agents of each other" and therefore each is liable for the actions of the other.

¶12. In providing nothing more than these conclusory allegations, the Ratliffs fail to allege any facts to suggest that either corporation has disregarded corporate formalities or has used the corporate form to commit misfeasance. Because they have failed to allege all of the material elements necessary to justify disregarding the corporate form, the Ratliffs have not asserted a viable claim against Penn National as required by M.R.C.P. 12(b). *See **Wallace v. Wood***, 752 A.2d 1175, 1184 (Del. Ch. 1999) (failure to allege subsidiary was a vehicle for fraud justifies dismissal for failure to state a claim); ***Walkovszky v. Carlton***, 18 N.Y.2d 414, 421 (N.Y. 1966) ("While the complaint alleges that the separate corporations were undercapitalized and that their assets have been intermingled, it is barren of any sufficiently particularized statements that the defendant Carlton and his associates are actually doing business in their individual capacities, shuttling their personal funds in and out of the corporations without regard to formality and to suit their immediate convenience. Such a perversion of the privilege to do business in a corporate form would justify imposing

personal liability on the individual stockholders. Nothing of the sort has in fact been charged.") (citations omitted); *RMS Techs. v. Nynex Computer Servs. Co.*, 1993 N.Y. Misc. LEXIS 616 (N.Y. Misc. 1993) (conclusory allegations of domination and control and specific allegations of the use of stationery or the sharing of a legal department are insufficient to withstand motion to dismiss); *cf. Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793-94 (Del. Ch. 1992) (specific allegations about the use of the corporate form to perpetrate fraud sufficient to withstand motion to dismiss); *Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 774 (Mo. Ct. App. 1994) (extensive allegations about the co-mingling of funds sufficient to withstand motion to dismiss). The trial court therefore erred in denying Penn National's motion to dismiss the complaint for failure to state a claim on which relief could be granted, and Penn National must be dismissed without prejudice.

**B.      Whether the Trial Court Erred in Denying Defendants' Motion to Transfer Venue**

¶13.    The decision to grant or deny a motion for a change of venue lies within the discretion of the trial court and will not be disturbed unless the trial court abuses its discretion. *Bayer Corp. v. Reed*, 932 So. 2d 786, 788 (Miss. 2006). In suits involving multiple defendants, venue properly established against one defendant is generally proper against all defendants. *See*, *e.g.*, *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1002 (Miss. 2004); *Blackledge v. Scott*, 530 So. 2d 1363, 1365 (Miss. 1998). However, when a resident defendant on whom venue is based is dismissed from the suit, venue is proper for the remaining defendants only where (1) the action was begun in good faith in the bona fide belief that plaintiff had a cause

9

of action against the resident defendant; (2) the joinder of the local defendant was not fraudulent or frivolous, with the intention of depriving the non-resident defendant of his right to be sued in his own county; (3) and there was a reasonable claim of liability asserted against the resident defendant. *New Biloxi Hosp., Inc. v. Frazier*, 245 Miss. 185, 192, 146 So. 2d 882 (1962). The threshold inquiry therefore is whether Penn National may be deemed a resident defendant for the purposes of the *Frazier* analysis.

¶14.   At the time the Ratliffs filed suit, Mississippi's venue statute read, in relevant part:

> Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant resides or in the county where the alleged act or omission occurred or where the event that caused the injury occurred. Civil actions against a non-resident may also be commenced in the county where the plaintiff resides or is domiciled.

Miss. Code Ann. § 11-11-3 (2002) (emphasis added).[2]  In *Snyder v. Logan*, this Court applied the older version of the venue statute and found that a foreign corporation was deemed to "reside" in the county where that corporation maintained a registered agent for service of process. 905 So. 2d 531, 532-34 (Miss. 2005) ("[Defendant maintained] a registered agent for service of process in Rankin County. . . . The trial court was correct in holding that venue was proper in . . . Rankin Count[y]."). BSL's reliance on *Plummer-Lewis Co. v. Francher*, 111 Miss. 656, 71 So. 907 (1916), is misplaced. In *Plummer-Lewis*, this Court held that venue for a domestic corporation was found in the county of their principal place of business and not where a registered agent for service of process could be found. *Id.*,

_____

[2]Miss. Code Ann. § 11-11-3 was amended effective September 1, 2004. Suits filed before that date are therefore governed by the older version of the statute.

10

71 So. at 908. In the present case, because Penn National is a foreign corporation with its principal place of business in Pennsylvania, the only place where it can be said to reside in this state is where an agent for service of process may be found. The Ratliffs must therefore meet the three prongs of the *Frazier* test in order to maintain their action in Hinds County.

¶15. Because the Ratliffs have failed to plead facts sufficient to state a claim against Penn National, their claim is unreasonable, and they fail to meet the third prong of the *Frazier* test. *See Austin v. Wells*, 919 So. 2d 961, 968 (Miss. 2006) (failure to state a reasonable claim means that the third prong of *Frazier* is not met); *Wayne Gen. Hosp.*, 868 So. 2d at 1003 (failure to withstand a motion for summary judgment means that *Frazier*'s third prong is not met). The trial court therefore erred in denying the motion to transfer venue, as there was no reasonable basis to keep Penn National in the suit.

### Conclusion

¶16. Because the trial court erred in denying Penn National's motion to dismiss and BSL's motion for transfer of venue to Hancock County, we reverse both the order denying the motion to dismiss and the order denying a transfer to Hancock County, and we remand the case to the Hinds County Circuit Court for the dismissal of Penn National from the suit without prejudice and the transfer of the Ratliffs' case against BSL and Danny McManus to the Circuit Court of Hancock County.

¶17. **REVERSED AND REMANDED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.**

11