CARLSON, Presiding Justice,
for the Court:
¶ 1. Robert Lee Kitchens, Jr., and his wife, Mary L. Kitchens, died as a result of injuries received in a collision between their automobile and a train owned and operated by Illinois Central Railroad Company (“Illinois Central”). The Administra-trix and wrongful-death beneficiaries of the Kitchenses’ estate filed a wrongful-death action against several parties, including the parent company of Illinois Central, Canadian National Railway Company (“Canadian National”), a foreign corporation.[1] Canadian National moved to dismiss for lack of jurisdiction and failure to state a claim. The circuit court granted the plaintiffs ninety days to conduct discovery “to justify piercing the corporate veil” and reserved ruling on the motion to dismiss pending completion of the discovery. Aggrieved, Canadian National filed a petition for an interlocutory appeal, and we granted the petition.
¶ 2. We find that the plaintiffs have not alleged with particularity the applicability of piercing the corporate veil to the facts of this case. Accordingly, we vacate the circuit court’s order permitting further discovery, reverse the circuit court’s failure to grant Canadian National’s motion to dismiss for lack of jurisdiction, and remand the case to the circuit court for the entry of a final order of dismissal without prejudice.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 3. On May 9, 2008, Robert Lee Kitchens, Jr., and his wife, Mary L. Kitchens, were involved in a tragic accident at a public railroad crossing on Montieello Road in Hazlehurst. The automobile in which the deceased were traveling was struck by a freight train owned and operated by Illinois Central. Mary was killed instantly, while Robert died of his injuries on August 4, 2008. On May 8, 2009, the Administratrix and wrongful-death beneficiaries of the Kitchenses’ estate filed a wrongful-death action against the above-named defendants in the Circuit Court of Copiah County. The plaintiffs alleged the accident was caused by the fact that previous false activations of the automatic flashing-light signals at the crossing had lulled the deceased into a false sense of security.
¶4. Canadian National is a Canadian corporation with its principal place of business in Montreal, Quebec. The plaintiffs do not allege any independent tort committed by Canadian National. However, the plaintiffs, in seeking to “pierce the corporate veil,” allege that Canadian National is the “alter ego” of Illinois Central, thus causing Illinois Central to be a “mere instrumentality” of Canadian National. It is undisputed that Canadian National does not directly own or operate any trains, tracks, crossing or warning devices, or other property in the State of Mississippi, nor does it have any employees located in Mississippi. However, the plaintiffs contend *1115 that Illinois Central is undercapitalized, based on Illinois Central’s 2008 balance sheet and Mississippi Rule of Civil Procedure 30(b)(6) testimony showing that Illinois Central had a net worth of negative $145 million in 2008. Canadian National contends that this balance shows nothing more than hard economic times.
¶ 5. On December 17, 2010, Canadian National filed a motion to dismiss for lack of jurisdiction and failure to state a claim pursuant to Mississippi Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. After conducting a hearing, the trial court, on June 17, 2011, entered an order granting the plaintiffs ninety days to conduct discovery “to justify piercing the corporate veil” and reserved ruling on the motion to dismiss pending completion of the discovery. The trial court’s order found that the plaintiffs had not presented sufficient evidence to pierce the corporate veil, but that the plaintiffs had “presented sufficient allegations to justify limited further discovery into the ‘alter ego’ or ‘mere instrumentality’ issue.” On July 7, 2011, Canadian National filed a petition for interlocutory appeal, which this Court granted on September 8, 2011. All proceedings in the trial court involving Canadian National have been stayed, pending our disposition of today’s case.
DISCUSSION
¶ 6. Finding the jurisdictional issue to be dispositive, we will discuss only the trial court’s failure to dismiss this case under Mississippi Rule of Civil Procedure 12(b)(2). “We review jurisdictional issues de novo. When considering jurisdictional issues, the Court sits in the same position as the trial court, ‘with all facts as set out in the pleadings or exhibits, and may reverse regardless of whether the error is manifest.’ ” Knight v. Woodfield, 50 So.3d 995, 998 (Miss.2011) (citations omitted). “On a [12(b)(2) ] motion to dismiss for lack of personal jurisdiction, all allegations of the complaint, together with reasonable inferences flowing therefrom, are accepted as true.” R.C. Constr. Co. v. Nat’l Office Sys., 622 So.2d 1253, 1255 (Miss.1993) (citation omitted).
¶ 7. In both tort and contract claims,
[T]he corporate entity will not be disregarded ... unless the complaining party can demonstrate: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder.
Penn Nat’l Gaming, Inc. v. Ratliff, 954 So.2d 427, 431 (Miss.2007) (citation omitted).
¶ 8. “Mississippi case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil.” Buchanan v. Ameristar Casino Vicksburg, Inc., 957 So.2d 969, 977 (Miss.2007). “ ‘[T]he cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders’ .... [t]his rule applies “whether such shareholders are individuals or corporations.’ ” Buchanan, 957 So.2d at 977 (citations omitted).
Piercing the corporate veil of a subsidiary to reach the parent corporation is not ‘lightly undertaken’ by Mississippi courts. Johnson & Higgins of Miss., Inc. v. Comm’r of Ins., 321 So.2d 281, 284-85 (Miss.1975). ‘Courts do not take piercing of the corporate veil lightly because of the chilling effect it has on corporate risk-taking.’ Nash Plumbing, Inc. v. Shasco Wholesale Supply, Inc., 875 So.2d 1077, 1082 (Miss.2004).
*1116 Id. at 978 (citations omitted). This Court “decline[s] to pierce the corporate veil except in those extraordinary factual circumstances where to do otherwise would subvert the ends of justice.” Ratliff, 954 So.2d at 431(citations omitted). This Court “recognize[s] that the corporate veil will not be pierced, in either contract or tort claims, except where there is some abuse of the corporate form itself.” Id. at 432.
¶9. It is apparent that, as the federal court for the Northern District of Mississippi has held, applying Mississippi law, there is a “quandry [sic ] [between] a liberal construction of the plaintiffs pleadings in a motion to dismiss, and the strict requirement of unusual circumstances to pierce the corporate veil.” N. Am. Plastics, Inc. v. Inland Shoe Mfg. Co., Inc., 592 F.Supp. 875, 879 (N.D.Miss.1984). To resolve this dilemma, the federal court held that, “absent a sufficient allegation of particularized facts, judicial economy requires that the corporate veil should not be preliminarily pierced for long-arm jurisdiction on the mere unsubstantiated allegations in the pleadings.” Inland Shoe, 592 F.Supp. at 879. Furthermore, “[i]n order to make a prima facie case of jurisdiction, the plaintiff must make sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case.” Id.
¶ 10. This Court now adopts the Inland Shoe standard of review, requiring the plaintiffs to support their particularized allegations by demonstrating facts to satisfy the requirements as set forth in Ratliff before allowing the corporate veil to be pierced. That is, a plaintiffs complaint alleging a piercing of the corporate veil will survive a Rule 12(b)(2) motion to dismiss only when the complaint sets forth factual allegations indicating: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder. See Ratliff 954 So.2d at 431.
¶ 11. Before the trial court, at the time of the hearing, the following documents, inter alia, were filed: (1) Canadian National’s motion to dismiss amended complaint, with attachments; (2) Canadian National’s brief in support of its motion to dismiss; (3) the plaintiffs’ response in opposition to Canadian National’s motion to dismiss, with attachments; and (4) Canadian National’s reply in support of its motion to dismiss, as well as supplemented documentation.
¶ 12. Some of the attachments to Canadian National’s motion to dismiss included: (a) the sworn affidavit of Michael T. No-vak, general counsel “for the United States railroad companies that are indirect subsidiaries of Canadian National Railway Company, including Illinois Central Railroad Company”; (b) the sworn affidavit of L. Wayne King, a Rankin County resident serving as General Manager of Operations of Illinois Central; (c) the sworn affidavit of Arthur L. Spiros, one of the custodians of real estate records for the operating subsidiaries of Canadian National in the United States; (d) 2008 W-2 forms for certain Mississippi employees of Illinois Central; (e) the sworn affidavit of Brett McCullough, a Madison County resident serving as a Risk Mitigation Officer for Illinois Central; and (f), a copy of the amended complaint. Some of the attachments to the plaintiffs’ response to the motion to dismiss included a 2008 financial balance sheet for Illinois Central, and a fifty-three-page deposition of Lawrence M. Mis, a manager of business integration for Illinois Central in Chicago, Illinois. This deposition was taken in connection with a *1117 case filed in the Circuit Court of Holmes County, Mississippi, styled “Tasandra Young and Shiron Young, Minors, by and through Sandra Young, as Grandmother and Next Friend vs. Illinois Central Railroad Company and Fred Herndon,” cause number 2006-0129 on the docket of that court.
¶ IB. Subsequent to the hearing, the trial court entered its order on June 17, 2011. In its order, the trial court concluded:
The Supreme Court has recently held that in Mississippi, undercapitalization alone is not a basis for disregarding the corporate entity. Stanley v. Mississippi State Pilots of Gulfport, Inc., 951 So.2d 535, 542 (Miss.2006). Plaintiffs allege Undercapitalization in the form of negative Net Worth based on an unaudited 2008 Balance Sheet as a basis for fraud, along with consolidated financial statements with the parent corporation and depositions of corporate employees. These assertions alone will not satisfy the heavy burden to disregard the corporate entity to reach the foreign corporation.
However, this Court finds that Plaintiffs have presented sufficient allegations to justify limited further discovery into the “alter ego” or “mere instrumentality” issue. Therefore, the court finds that the Plaintiffs should be allowed ninety (90) days to provide the court, with evidence sufficient to justify piercing the corporate veil. Upon completion of this period, the Court will revisit this Motion and all relevant findings.
¶ 14. We agree with the trial court’s methodology in considering the pleadings and attachments before it, including sworn affidavits and depositions. In R.C. Construction Company, this Court stated:
A non-resident defendant may, on his pre-trial Rule 12(b)(2) motion to dismiss, litigate the inherent factual questions through the use of live testimony or affidavits.... If the court finds facts that sustain his defense, it should dismiss, as the presumption implicit in the well-pleaded allegations rule has “spent its force and vanished.”
R.C. Construction Co., 622 So.2d at 1255 (citations omitted). Thus, the trial judge in today’s case appropriately considered the sworn affidavits and deposition testimony before him, as well as other documentation. But we disagree with the trial judge’s failure to dismiss the case as to Canadian National for lack of jurisdiction.
¶ 15. The plaintiffs’ only claim to personal jurisdiction over Canadian National derives from their claim that Illinois Central is the “alter ego” or “mere instrumentality” of Canadian National. We do not find that the plaintiffs have demonstrated today that the corporate entity should be disregarded under the Ratliff factors. In particular, no sufficiently particularized allegation has been made of fraud or other equivalent misfeasance on the part of the corporate shareholder.
¶ 16. In support of their allegation that Illinois Central is a “mere instrumentality” of Canadian National, the' plaintiffs note that it is undisputed in the record that Illinois Central had a negative net worth of $145 million in 2008. On this basis, the plaintiffs allege that Illinois Central is un-dercapitalized. Canadian National responds that this showing does not indicate that Illinois Central was undercapitalized, but only that Illinois Central was experiencing hard financial times. Canadian National notes that the relevant time period examined by other jurisdictions that have looked to whether a corporation is under-capitalized is the time at which the corporation became a subsidiary. See, i.e.,. Seymour v. Hull & Moreland, 605 F.2d 1105, 1112-13 (9th Cir.1979); Whitney v. Wurtz, *1118 2007 WL 1593221, *6 (NJD.Cal.2007). Nothing in the record before us indicates Illinois Central’s net worth at that time, or in ariy year other than 2008. Furthermore, nothing is before us to indicate that, if the plaintiffs obtained judgment against Illinois Central, their efforts to collect on such judgment would be thwarted, or that the plaintiffs’ expectations regarding Illinois Central would be otherwise frustrated. We find that it has not been properly alleged that Illinois Central presently has a negative net worth, since the totality of the financial information before us reflects only the fiscal year 2008.
¶ 17. Furthermore, even if the plaintiffs had asserted a sufficient claim that Illinois Central was undercapitalized, under Mississippi caselaw, undercapitalization alone is insufficient to pierce the corporate veil. This Court has noted that, while in some jurisdictions, a showing of undercapitalization has been held to be sufficient to pierce the corporate veil, “[tjhis is too stringent a test and is not the rule in Mississippi.” Stanley, 951 So.2d at 542. In fact, this Court in Buchanan expressly considered a ten-factor test that included undercapitali-zation as a factor in considering whether to pierce the corporate veil. Buchanan, 957 So.2d at 976-77. Instead, this Court chose to maintain the three-factor test discussed above, which does not include un-dercapitalization as a factor in determining whether to pierce the corporate veil. Id. Therefore, even if Illinois Central’s 2008 negative net worth were recognized as a sufficiently particularized allegation of un-dercapitalization, that fact alone would not be sufficient to justify piercing the corporate veil.
f 18. The plaintiffs further note that Illinois Central’s financial reports are consolidated with those of Canadian National. However, federal courts in foreign jurisdictions have noted that “consolidating the activities of a subsidiary into the parent’s annual reports is a common business practice” and “is allowed by both the Internal Revenue Service and the Securities and Exchange Commission.... ” Calvert v. Huckins, 875 F.Supp. 674, 678-79 (E.D.Cal.1995) (citing Lowell Staats Min. Co. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1264 (10th Cir.1989) and Volkswagenwerk Aktiengesellschaft v. Beech Aircraft, 751 F.2d 117, 121 n. 3 (2d Cir.1984)). In fact, “[t]he rules regarding the consolidation of subsidiaries are controlled by generally accepted accounting principles, which require parent corporations to consolidate subsidiaries if the parent owns more than 50 percent of the subsidiary’s stock.” Volkswagenwerk, 751 F.2d at 121 n. 3 (citing American Institute of Certified Public Accountants, “Consolidating Financial Statements,” Accounting Research Bulletin No. 51, at 2 (1959)).[2] As discussed above, Illinois Central is a wholly-owned subsidiary of Canadian National.
¶ 19. The plaintiffs do cite a few cases from other jurisdictions indicating that a general practice of diverting revenues and commingling funds is sufficient to show alter-ego liability. See, i.e., Wajilam Exports (Singapore) v. ATL Shipping, 475 F.Supp.2d 275, 283 (S.D.N.Y.2006). However, we find that Canadian National has presented convincing documentation that consolidated financial reports between parent corporations and their majority-owned subsidiaries are encouraged or required both by general accounting practices and *1119 within the railroad industry. Therefore, we hold that the practice does not constitute a particularized allegation of a flagrant disregard of corporate formalities sufficient to support piercing the corporate veil, much less a particularized allegation of fraud or misfeasance.
¶20. The plaintiffs also argue that Illinois Central’s negative net worth renders it punitive-damages-proof. Mississippi Code Section 11 — 1—65(l)(e) states that “in determining the amount of punitive damages, [the Court] shall consider, to the extent relevant, the following: the defendant’s financial condition and net worth.... ” The plaintiffs also note that Section 11-1-65 requires the following method to calculate the punitive-damages cap:
(3) (a) In any civil action where an entitlement to punitive damages shall have been established under applicable laws, no award of punitive damages shall exceed the following:
(i) Twenty Million Dollars ($20,000,-000.00) for a defendant with a net worth of more than One Billion Dollars ($1,000,000,000.00); ...
(vi) Two percent (2%) of the defendant’s net worth for a defendant with a net worth of Fifty Million Dollars ($50,000,000.00) or less.
(b) For the purposes of determining the defendant’s net worth in paragraph (a), the amount of the net worth shall be determined in accordance with Generally Accepted Accounting Principles.
Miss.Code. Ann. § 11-1-65 (Supp.2011). Accordingly, the plaintiffs suggest that this is an “extraordinary factual circum-stanee[ ] where [not piercing the corporate veil] would subvert the ends of justice.” Ratliff, 954 So.2d at 431 (citations omitted). However, we do not find that the potential liability, vel non, of Illinois Central to punitive damages is relevant in addressing the instant question of whether Canadian National is subject to this Court’s jurisdiction.
¶ 21. As discussed above, we have found that the plaintiffs have not alleged with particularity that Illinois Central presently has a negative net worth, since the totality of the financiál information in evidence reflects only the fiscal year 2008. Furthermore, we find no legal support for the plaintiffs’ argument that a company with a negative net worth is not subject to punitive damages. This Court determined in Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1193 (Miss.1996), that net worth is only one of several factors that Mississippi Code Section 11-1-65 allows a jury to consider in awarding punitive damages. This Court also determined that a showing that a defendant has a negative net worth does not necessarily prevent the jury from awarding punitive damages. Henson, 672 So.2d at 1193.
1122. The text of Mississippi Code Section 11-1-65(3) cited by the plaintiffs was added to the statute in 2002 and did not exist in 1996 when Henson was handed down. However, the cited text merely establishes that net worth is considered— not that it is solely considered — in determining the amount of punitive damages, and it is used to calculate the statutory cap for punitive damages. We do not see how a statutory cap based on net worth suggests that there is a minimum net worth, such as zero, that will “cut off’ the award of punitive damages. Hence, Illinois Central potentially could be liable for punitive damages, even if it were determined that the company presently has a negative net value.
¶ 23. Thus, this allegation does not substantiate the flagrant disregard of corporate formalities, nor of fraud or equivalent misfeasance on the part of Canadian National. The plaintiffs have offered nothing *1120 to substantiate the assertion that a corporation maintaining a negative net worth, even for a sustained period of time, disregards corporate formalities or that this constitutes fraud or misfeasance. Therefore, even taking this argument to be true, we cannot find that it alleges with particularity the applicability of piercing the corporate veil to the facts of this case.
¶24. In sum, the plaintiffs have not provided sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to establish a pri-ma facie case of jurisdiction in this case. See Inland Shoe, 592 F.Supp. at 879. Accordingly, judicial economy requires that the corporate veil should not be pierced preliminarily for long-arm jurisdiction on the mere unsubstantiated allegations in the pleadings. See id. We therefore hold that the trial judge erred in failing to dismiss the case for lack of jurisdiction under Mississippi Rule of Civil Procedure 12(b)(2).
¶25. Because of our discussion of the jurisdictional issue, we need not address the issue of failure to state a claim upon which relief can be granted under Mississippi Rule of Civil Procedure 12(b)(6).
CONCLUSION
¶26. Based on today’s discussion, we hereby vacate the June 17, 2011, order of the circuit court allowing the plaintiffs to conduct further discovery against Canadian National “to justify piercing of the corporate veil.” We find that the trial court erred in failing to dismiss the case for lack of jurisdiction under Mississippi Rule of Civil Procedure 12(b)(2). Therefore, we remand the case to the Copiah County Circuit Court for the entry of a final order of dismissal without prejudice. Rochaway Commuter Line, Inc. v. Denham, 897 So.2d 156, 160 (Miss.2004).
¶ 27. VACATED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, CHANDLER, PIERCE and KING, JJ., concur. KITCHENS, J., NOT PARTICIPATING.

. Throughout the opinion, Illinois Central is referred to as the subsidiary of Canadian National. To be more precise, the relationship is more complex. Illinois Central, an Illinois corporation, has been, since May 23, 1997, a wholly-owned subsidiary of Illinois Central Corporation, a Delaware corporation. Illinois Central Corporation is a wholly-owned subsidiary of Grand Trunk Corporation, also a Delaware corporation. Finally, Grand Trunk Corporation is a wholly-owned subsidiary of Canadian National, a Canadian corporation with its principal place of business in Montreal.

. Canadian National also attached to its brief ‘‘Surface Transp. Bd. Decision, STB Ex Parte No. 634” (Nov. 7, 2001), in which the Surface Transportation Board concluded that ‘‘consolidated reports should be required for each group of railroads ... that operate as a single, integrated United States rail system” with annual operating revenues of at least $250 million, measured in 1991 dollars.